Keating, J.
For many years, the Senior Sodality of St. Raymond’s Roman Catholic Church of East Rockaway had been meeting in the parish school. On Monday night, January 4, 1960, Gertrude Gallagher, then 60 years old, arrived to attend the weekly meeting of the Sodality. She climbed the six steps to the landing in front of the center door and entered the school. The lights, which illuminated the exterior of the building, were on.
Mrs. Gallagher left the Sodality at about 11:15 p.m. When she stepped into the night air, she found herself in the dark. Someone had turned the lights off. Remembering that there was a handrail on the steps, Mrs, Gallagher ¡started to move toward the handrail. But she had forgotten that the landing or platform onto which the door opened did not extend to the handrail. As a result, in searching for the handrail, she lost her footing and fell, injuring herself.
A jury returned a verdict in favor of the Gallaghers in the negligence action thereafter brought by them to recover damages for the injuries sustained by Mrs. Gallagher. Upon defendant’s appeal, the Appellate Division (Second Department) unanimously reversed but solely on the law, holding, in accordance with established precedent (McCabe v. Mackay, 253 N. Y. 440; Kiernan v. Roman Catholic Church of St. John the Evangelist, 11 A D 2d 997, affd. 10 N Y 2d 853), that the defendant was under no duty at common law to illuminate an exterior stairway ‘ ‘ with artificial light, in the absence of defective conditions, or conditions of peculiar danger, that may call for special warning ”. (McCabe v. Mackay, supra, p. 442).
Plaintiffs attempt to distinguish Kiernan upon the ground that the handrail was not within reach of a person leaving the building. We agree with the conclusion of the Appellate Division that this factor did not create an unusually hazardous condition calling for a special warning. It would be inconsistent with common experience as well as a most improper distortion of the McCabe rule to hold that the failure to have a *557 handrail on the steps constituted an unusual hazard (Bohlig v. Schmitt, 5 A D 2d 1002, affd. 5 N Y 2d 885).
We are, therefore, called upon to determine whether the traditional common-law rule is still valid or whether we should articulate a modification of that rule to be followed in eases such as the one at bar.
Whenever the general public is invited into stores, office buildings and other places of public assembly, the owner is charged with the duty of providing the public with a reasonably safe premises, including a safe means of ingress and egress. In general, his duty is to use reasonable care at all times and in all circumstances (Haefeli v. Woodrich Eng. Co., 255 N. Y. 442). Thus, had Mrs. Gallagher fallen because of a hole or other defective condition in the stairway, no question would be raised that the defendant had breached its duty of due care. (Weiner v. Leroco Realty Corp., 279 N. Y. 127; Richards v. Olsen, 259 App. Div. 1112.)
The common-law rule that there was no duty to provide artificial light in the common hallways and stairways of buildings was originally formulated in the age of the gas light (Hilsenbeck v. Guhring, 131 N. Y. 674 [1892]; Brugher v. Buchtenkirch, 167 N. Y. 153 [1901]; Gorman v. White, 19 App. Div. 324 [1897]).. The use of even gas lighting in the interior of buildings was far from universal, while electric lighting of public streets had barely started. The immense quantity of electricity needed to light our cities, towns and villages was still not readily available at low cost.
Nevertheless, even before the traditional rule was given its definitive approval in this court in the McCabe case, its erosion by legislative action began (New York City Code of Ordinances, § 159). And so it has continued. (Multiple Residence Law, § 109 [1952]; Administrative Code of City of New York, §§ C26-272.0, C26-743.0 [1938].)
In 1965—albeit principally for public safety purposes—the Legislature passed an amendment to the Multiple Dwelling Law requiring that all multiple dwellings in our two largest cities have exterior lighting. (Multiple Dwelling Law, § 35 [L. 1965, ch. 496, eff. Jan. 1, 1966].) The result of all this legislative action is that, in our State’s largest city, we are left with the rather peculiar situation that, aside from private *558 dwellings, only certain categories of public buildings built before 1938 need not be lit in the evening.
It is saying the obvious but it bears repetition that whether a society will tolerate a particlular course of conduct is, to a large measure, dependent upon the development of society at the particular moment when the courts are called upon to enunciate a proper standard of care. We can conceive of no reason why at the present time the owner of a public building should not be required to light the exterior of his building at those times when it is open to the public. The traditional rule no longer expresses a standard of care which accords with the mores of our society. The public is entitled to a safe and reasonable means to .enter and exit from an open public building. In this day and age, this should mean a lit path or stairway to the street (see Restatement, 2d, Torts, § 343, comment e). Few public buildings are now without exterior illumination. People, especially the elderly, should not be required to risk their health or lives groping in the dark hoping to find a handrail by which they might guide themselves in safety to the public sidewalk. The burden on the owner for taking this simple precaution, in terms of the cost of electricity and maintenance, is slight compared to the injuries or worse that can be avoided.
The legislative process has pointed the way. We choose to follow because we recognize that .the common law of this State is not an anachronism, but is a living law which responds to the surging reality of changed conditions. We, therefore, do not hesitate to purify our law of what has, with the passage of time, become a most anomalous exception to the general comm on - law rule of due care. The lights on the school building should not have been turned off until it was ascertained that the members of the Sodality, including Mrs. Gallagher, had left the premises. This the jury impliedly found in resolving the issues in this case in plaintiffs’ favor. The verdict should be reinstated, with costs in all courts.
Chief Judge Fund and Judges Burke, Scileppi, Bergan, Breitel and Jasen concur.
Order reversed, with costs, and the verdict reinstated.