259 A.2d 843.

ADELAIDE DODGE *vs.* PARISH OF THE CHURCH OF THE TRANSFIGURATION.

DECEMBER 10, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

---

KELLEHER, J. This is a negligence action to recover damages resulting from the plaintiff's fall on the defendant church's property. A jury trial was held in the Superior Court. At the conclusion of the plaintiff's evidence, the trial justice granted the defendant's motion that a verdict be directed in its favor. Thereafter, judgment was entered for the defendant and the plaintiff's appeal followed.

The defendant church is located in Cranston at the northwesterly corner of Broad Street and Wheeler Avenue. The plaintiff, a lady in her late fifties, is a widow. At approximately 5:30 p.m. on May 12, 1967, she, her sister and brother-in-law attended a banquet commemorating the seventy-fifth anniversary of the founding of the Church of the Transfiguration. The festivities were held in a hall located in the church. Tickets for this event sold for $2.75 each. The plaintiff's sister who is a member of the church had purchased the tickets. The plaintiff does not belong to the church. The defendant concedes that plaintiff was its business invitee on this particular evening.

The banquet ended at about 8:45 p.m. The plaintiff, together with her sister and brother-in-law, left the church by going out a side door located near the rear of the church. As she left the church, plaintiff proceeded down one step and onto a cement walk which led to a sidewalk abutting Wheeler Avenue. The cement walk is approximately 3 feet in width and 30 feet in length. It is situated on defendant's premises. There is a lantern-type electric light hung over the doorway. It was on. For the most part the light's rays shone down on the step. As plaintiff left the hall, she entered into a dark moonless night. To her right was a hip-high hedge which ran along the entire length of the walk. Its leaves and bushes extend just slightly over the walk and cast a shadow on the paved surface. When plaintiff had traversed half the distance down the walk, her heel left the cement and became caught in the soil at the bottom of the hedges. This caused plaintiff to fall and injure her hip. As the result of her injuries, plaintiff suffered a loss of income and experienced two extended periods of hospitalization.

The plaintiff blamed her fall on defendant's failure to properly illuminate the cement walk. At the point of the fall, the walk was about two or three inches above the soil bed of the hedges. Had the walk been properly illuminated, plaintiff contends, she would have seen the gap between the walk and the hedges, and avoided it.

An architect testified for plaintiff. He stated that the lighting provided by the church at this exit was totally inadequate and that the manner in which the soil abutted the walk created a hazard to those pedestrians using the walk.

The trial justice based his grant of defendant's motion solely on the basis of the holding of this court in *White* v. *Heffernan*, 60 R. I. 363, 198 A. 566. There we reiterated the common-law rule that a landlord who retains control of

the entries, hallways and stairways is under no duty, as a matter of law, even to a stranger rightfully on the premises, to artificially light those areas if they are otherwise inherently safe and convenient.

In her appeal, plaintiff not only contends that we should abolish the rule described in the *White* case, she also distinguishes the holding in *White* with the case at bar by pointing out here that we are not confronted with a landlord and tenant relationship but rather a business invitor-invitee relationship. We think that there is much to be said for plaintiff's position.

It has long been the rule in this state that a possessor of property who rents portions of that property to various tenants and retains control over the portions thereof which are used in common by all the tenants or their guests has a duty to keep such portions in a reasonably safe condition. *Reek* v. *Lutz*, 90 R. I. 340, 158 A.2d 145; *Allen* v. *William H. Hall Free Library*, 68 R. I. 80, 26 A.2d 751. This duty also extends to those ways which may be outside of the demised premises. *Lawton* v. *Vadenais*, 84 R. I. 116, 122 A.2d 138. An exception to this duty has been carved out by the common law that there is no obligation by the landlord to light those areas under his control unless they present an unusual hazard in the darkness.

Whenever we have discussed the relationship between a business invitee and a property owner, we have repeatedly said that, while the owner is not an insurer of the safety of those who accept his invitation to come on his property, he must use reasonable care to keep his premises in a safe condition for the purpose of the extended invitation. *Blakeney* v. *Associated Subdivisions, Inc.*, 97 R. I. 34, 195 A.2d 234; *McVeigh* v. *McCullough*, 96 R. I. 412, 192 A.2d 437; *DeMello* v. *St. Thomas Church*, 91 R. I. 476, 165 A.2d 500.

In ruling as he did, the trial justice actually was invoking a rule first enunciated by this court in *Capen* v. *Hall*, 21

R. I. 364, 43 A. 847. There the plaintiff had been an invitee of one of the defendant's tenants. In effect, this court said that the tenant's invitee stood in no better position than the tenant. There was, the court said, no duty owed by the landlord to "strangers" on his premises to illuminate the corridors and entranceways under his control. In discussing the duty owed by Hall to Capen, our predecessors cited *Muller* v. *Minken*, 5 Misc. Rep. 444 (N. Y.). An examination of that case shows that it was a product of the gaslight era. There the plaintiff alleged that it was the landlord's duty to light the gas lamps in the hallways.

When the common-law principle set forth in *Capen* was first formulated, it was generally recognized that, at that time in our civilization, there were no reliable lighting devices available which for a reasonable expenditure of money and effort would enable a landlord to properly illuminate that portion of his property which he controlled. In fact, in 1899, when *Capen* was first decided, this court held that it would be "unreasonable" to require a landlord to light up the entries, corridors and stairways of his building. This was, it declared, an "onerous" burden to place on a property owner. If a person saw fit to poke around in a strange and unlighted hallway and fell down, he had, the court in *Capen* said, little cause to complain. The time has come, we believe, to re-examine the rationale of *Capen* since that case served as the basis of the holding in *White*.

Edison's incandescent lamp first glowed on October 21, 1879. Today, however, the tremendous advances which have been made in the field of illumination completely negate the concern the court in *Capen* expressed for the landlord of the late nineteenth century. While the common-law rule that a property owner had no duty to illuminate his property might have had some merit at the turn of the century, we now live in a new era.

In *Rietzel* v. *Cary*, 66 R. I. 418, 19 A.2d 760, the Court

pointed out that the legislature had not yet [1941] seen fit to modify the rule set forth in the *Capen* case. This is no longer true. In 1962, the General Assembly enacted general enabling legislation which permits each city and town in this state to adopt local ordinances which set forth certain minimum housing standards. This act specifically states that the ordinances may require a landlord to artificially illuminate the halls and stairways of his property. The Rhode Island Department of Community Affairs reports that 25 of the 39 municipalities in this state have adopted minimum housing ordinances whereby landlords are required to illuminate halls and stairways of all dwellings. There has occurred, therefore, a legislative chipping away of the rule of *Capen*.

Recently the New York Court of Appeals in *Gallagher* v. *St. Raymond's Roman Catholic Church*, 21 N.Y.2d 554, 289 N.Y.S.2d 401, 236 N.E.2d 632, rejected the common-law rule referred to earlier and held that a person who attended a meeting of a church organization could maintain a suit for injuries she received when she fell down the unlighted steps of the church's property. The court declared:

"We can conceive of no reason why at the present time the owner of a public building should not be required to light the exterior of his building at those times when it is open to the public. The traditional rule no longer expresses a standard of care which accords with the mores of our society. The public is entitled to a safe and reasonable means to enter and exit from an open public building. In this day and age, this should mean a lit path or stairway to the street * * *." *Id.* at 558, 289 N.Y.S.2d at 403, 236 N.E.2d at 634.

In Rhode Island, we still recognize the distinction in the degree of care owed by a property owner to a trespasser, a social guest or a business invitee.[1] While we cannot, there-

[1]For the rule as to a trespasser see *Previte* v. *Wanskuck Co.*, 80 R. I. 1, 90 A.2d 769. For the rule as to a social guest see *Pagliaro* v. *Pezza*, 92 R. I. 110, 167 A.2d 139.

fore, embrace in toto the broad sweep of the mandate in *Gallagher,* much of what the court relates has special significance to the case at bar. Last year in *Cofone* v. *Narragansett Racing Ass'n, Inc.,* 103 R. I. 345, 237 A.2d 717, we held that the duty of "reasonable care" owed by an operator of a public amusement park demands a higher degree of diligence than it does when applied to an owner of private premises. So, too, we believe that this same requisite degree of diligence should be expected of the owner of a building who, because of some pecuniary profit motive or for some other material beneficial reason, extends an invitation to the public to come onto his property. For this reason we can see no purpose why the common-law rule as set forth in *Capen* and repeated in *White* should be applied to the instant case.

The church opened wide its doors and charged a fee for those who attended its anniversary banquet. Having done so, defendant then owed a duty to those who accepted its invitation to maintain its premises in a reasonably safe condition including a reasonably safe means of ingress and egress for the invitees. This duty included an obligation by the church to provide adequate illumination of the cement walk which went from the church doorway to the street. As was pointed out in *Gallagher,* the burden which the owner assumes for taking this simple precaution in terms of cost and maintenance is insignificant when compared to the injuries and personal misfortune that can be avoided.

In holding that the defendant has a duty to provide adequate illumination of the exterior of its premises, we point out that at the new trial that follows, the plaintiff still must convince the jury that the defendant breached this duty, that this breach was the proximate cause of her injuries and finally, she must demonstrate her freedom from conduct which in law might be classified as contributory negligence.

The plaintiff's appeal is sustained, the judgment appealed

from is vacated, and the case is remitted to the Superior Court for a new trial.

*Rosedale & Iannuccillo, Anthony G. Iannuccillo, Gunning & LaFazia, John F. McDonough,* for plaintiff.

*Bernard F. McSally,* for defendant.