■ ALICE MARQUART, Individually, and as Administratrix of the Estate of ERNEST MARQUART, Deceased, et al., Plaintiffs-Respondents, v YESHIVA MACHEZIKEL TORAH D'CHASIDEL BELZ OF NEW YORK, Defendant-Respondent, and CITY OF NEW YORK, Appellant, et al., Defendant.—In an action to recover damages for wrongful death and personal injuries, the defendant City of New York (the City) appeals from a judgment of the Supreme Court, Kings County, entered June 14, 1974 which, after a jury trial, is (1) in favor of plaintiffs and against it, (2) in favor of the defendant Yeshiva and against plaintiffs and (3) in favor of the defendant Yeshiva and against it on its cross claim. Judgment modified, on the law, by deleting therefrom the first through sixteenth decretal paragraphs inclusive, which granted plaintiffs' judgment against the City, and, as between plaintiffs and the City, action severed, and new trial granted, with costs to abide the event. As so modified, judgment affirmed. No costs or disbursements are awarded as between the City and the Yeshiva. The fact findings as between plaintiffs and the Yeshiva and as between the City and the Yeshiva are affirmed. The fact findings as between plaintiffs and the City have not been passed upon. The plaintiffs herein (we include within the term "plaintiffs" the representative of a deceased person) were injured, and one of them killed, while fighting a fire in an abandoned public school building on June 26, 1964, when they

were crushed by the fall of a heavy suspended ceiling. The building, which had been constructed at some time before the turn of the century, was purchased in 1961 by the Yeshiva from the City with a purchase-money mortgage. From 1959 to 1961, the Yeshiva had leased the building from the City. A custodian for the New York City Board of Education, who had been a custodian in the building from 1953 to 1959, testified that the suspended ceiling had been hanging in the building during all of that period. The record further indicated that the Yeshiva had not made any alterations in the ceiling during the time it occupied the building. Plaintiffs brought suit under both the theory of common-law negligence and under section 205-a of the General Municipal Law. The latter confers a cause of action upon injured firemen, and the families of deceased firemen, against any person or entity causing the injury or death by reason of the violation of any statute, ordinance, code or regulation of any government or subdivision thereof. The whole thrust of plaintiffs' case was that the ceiling had been hung from the roof by combustible wooden straps instead of by metal hangers; that the wooden hangers were extremely susceptible to quick collapse in the event of fire; that the use of wooden hangers violated good and sound construction practice and violated certain provisions of the Administrative Code of the City of New York; and that the use of the wooden hangers was a proximate cause of their injuries. In attempting to prove that the use of wooden hangers was a violation of sound construction practice and of certain provisions of the Administrative Code, plaintiffs relied exclusively on the testimony of one expert witness. He was allowed to testify that the requirement of metal hangers for suspended ceilings in schools was provided for in section C26-461.0 (subd 2, par [d]) of the 1938 Administrative Code of the City of New York; that such provision had a retroactive effect to all "special occupancy structures", i.e., schools, built before 1938; and that such provision of the Administrative Code codified existing standards in the construction industry. In our view the trial court erred in allowing the expert witness to usurp its function as the sole determiner of the law (see *Petru v Hertz Corp.,* 33 AD2d 755). Moreover, that error seriously prejudiced the City in view of the fact that the expert was totally wrong in his testimony as to the substance and effect of the 1938 Administrative Code. There is no reference at all in the Administrative Code of 1938 to any requirement of metal hangers to support suspended ceilings in schools. The section which was referred to by the expert, i.e., section C26-461.0 (subd 2, par [d]), and which was charged by the court to the jury, is contained in the 1957 edition of the Administrative Code, which, in turn, reflects amendments made to the Administrative Code in 1951. Those amendments, and particularly section C26-461.0 (subd 1, par [c]; subd 2, par [d]) provide for the use of metal hangers in "existing non-fireproof", "special occupancy structures". However, those amendments are governed by a section in both the 1938 and 1957 editions of the Administrative Code which specifically provide that "Every structure or part thereof constructed in the city, after January first, nineteen hundred thirty-eight * * * shall be constructed * * * in conformity with the provisions of this title" (see Administrative Code, § C26-5.0). Consequently, the admission into evidence of the expert's opinion that the requirement of metal hangers contained in the Administrative Code applied generally to school buildings constructed before 1938, and specifically to the very old building in question, constituted prejudicial error. The expert testified that the ceiling in question was built after 1938. However, his testimony on that point was too speculative to satisfy the requirement of the Administrative Code (§ C26-5.0). He based his opinion that the ceiling was

built after 1938 on the fact that it complied with all of the provisions of the 1938 code with but one exception, i.e., the hangers supporting the ceiling were wooden and not metal. The expert's opinion, however, does not follow logically from the facts. Assuming, *arguendo,* that the 1938 code contained a requirement of metal hangers, the fact that the ceiling herein was supported by wooden hangers would seem to indicate that it was built before, and not after, 1938. In further testimony on this point, the expert stated that the ceiling was "built after '38 or just before, say since 1930". In our view, this testimony was too speculative to come within the ordinance's provision that metal hangers were required in suspended ceilings in schools built after January 1, 1938. Consequently, a new trial should be granted as between plaintiffs and the defendant City, at which time plaintiffs will have the opportunity, if they so choose, to introduce more definitive and credible expert testimony on this issue. Regarding the defendant Yeshiva, the judgment in its favor should be affirmed. There was expert testimony that the defect, as far as a layman was concerned, was a hidden one and could not have been discovered by a layman, even by an inspection. There was no evidence in the record to indicate that the Yeshiva was ever put on actual or constructive notice of the existence of the defect. Accordingly, there was sufficient evidence in the record to warrant the jury's finding in its favor. Martuscello, Acting P. J., Cohalan, Damiani, Shapiro and Titone, JJ., concur.