■ EUGENIA CHRISTOFOROU et al., Respondents-Appellants, v RHODA LOWN et al., Appellants-Respondents.—Judgment, Supreme Court, New York County (Robert E. White, J.), entered June 18, 1985, in favor of plaintiff Eugenia Christoforou (Mrs. Christoforou) in the final amount of $141,400 and plaintiff

Militides Christoforou (Mr. Christoforou) in the final amount of $7,000 which awards constituted reductions from a gross verdict in favor of Mrs. Christoforou in the amount of $202,-000 and of Mr. Christoforou in the amount of $10,000, the jury having found Mrs. Christoforou to be 30% negligent, is reversed, on the law and on the facts, the judgment is vacated, and the complaint is dismissed, without costs.

Mrs. Eugenia Christoforou, on July 13, 1981, at approximately noontime, arrived at 255 West 84th Street, New York County, which apartment building was owned by defendants. Thereafter, Mrs. Christoforou, who was 80 years old at the time, asked the doorman if there was a public telephone she could use. Thereupon, the doorman directed Mrs. Christoforou to enter the building. Once inside, she and the doorman walked through an approximately 100-foot-long lobby, turned, walked another 20 feet to the doorway of a hallway, which was where the telephone was located. Even though she admitted that there was a dim light on the high ceiling of the hallway, and that she could see the telephone on the wall because it was lighted, Mrs. Christoforou allegedly complained to the doorman, who was walking behind her, "It's dark, too dark, I can't see it". In response, the doorman allegedly stated, in substance, "Go ahead. Go ahead. There is the telephone." Thereafter, Mrs. Christoforou, while looking straight ahead at the telephone, continued walking, and midway down the corridor, stumbled on a two-step staircase. As she was falling, she allegedly reached for a handrail, but there was none. This fall resulted in her fracturing her left heel.

Subsequently, Mrs. Christoforou and her husband commenced an action against the defendants to recover for her injuries and his loss of services. The basis of the plaintiffs' action was that allegedly the dim lighting in the hallway caused Mrs. Christoforou's accident. After issue was joined, a jury trial was held.

At trial, Mrs. Christoforou testified to the facts, as set forth, *supra*. In addition, she testified, in pertinent part: (1) that, before the accident, she had been in the subject building in order to inspect an apartment on the third floor, which had been advertised by the tenant for sale; (2) that, she took the passenger elevator to the apartment that she inspected; (3) that, some years prior to the accident, she had undergone surgery for the removal of cataracts; (4) that, also at sometime in the past, she had glaucoma, but, at the time of the accident, she was not putting drops in her eyes; (5) that, she always

wears glasses; (6) that, she does not have any trouble seeing; and, (7) that, she did not see the steps, since they were allegedly the same "off-white" color as the rest of the hallway floor.

Reis Dalmas (Mr. Dalmas), who was the superintendent of the subject building, testified for the defendants. In substance, Mr. Dalmas testified: (1) that the lobby area is 100 feet by 30 feet; (2) that, in order to reach the telephone on entering the vestibule of the building, a person must walk straight ahead, then turn left and walk 20 feet, and then walk another 100 feet to the telephone; (3) that, approximately halfway along the 100 feet toward the telephone, there are two off-white marble steps; (4) that, the color of the flooring in this area is off-white like the marble steps; (5) that within 10 feet of the steps is a ceiling fixture containing a 40-watt fluorescent bulb; (6) that, along the corridor that Mrs. Christoforou used to reach the telephone is a passenger elevator, as well as mailboxes and apartment doors; (7) that, the area between the door of the vestibule and the main lobby to the telephone was lighted by three overhead fixtures, which contained a total of approximately 125 watts; and, (8) that, on the day of the incident, all the lights were working.

Although Mrs. Christoforou contended that the stairs were a "trap", in view of the fact that they were the same color as the floor in the hallway, the trial court refused to permit Mr. Dalmas to testify: (1) that, during the 27 years he had been superintendent, he had never received a complaint about the lighting conditions, which had remained the same throughout that period; and, (2) whether he had knowledge of any prior accidents in that hallway.

Even though the trial court conceded in the record of trial that the plaintiffs presented no expert testimony with respect to either the lighting conditions in the hallway or whether the defendants had complied with the lighting requirements for public hallways, which are contained in Administrative Code of the City of New York § D26-19.03, the trial court, over defense objection, charged this Administrative Code section to the jury.

The jury returned a verdict in favor of the plaintiffs, which was reduced by the 30% mentioned *supra*.

We agree with the dissent that the trial court committed prejudicial errors in limiting Mr. Dalmas' testimony and in charging the Administrative Code section on lighting requirements.

First, as to Mr. Dalmas' testimony. In view of the fact that the plaintiff contended that the two-step marble staircase was a "trap", because it was the same off-white color as the hallway floor, the trial court erred in refusing to allow Mr. Dalmas to testify: (1) that he had never received any complaints about the lighting conditions in this hallway; and, (2) whether he had knowledge of any prior accidents in that hallway. Testimony about lighting complaints and prior accidents from this witness, who had 27 consecutive years of experience at the subject building, would have been particularly relevant on the issue of defendants' alleged negligence. His testimony that he never received any complaints about the quality of the lighting in that hallway would have strengthened the defendants' position that they had received no notice of a dangerous condition (see, Bolm v Triumph Corp., 71 AD2d 429, 438 [1979], lv dismissed 50 NY2d 928 [1980]). Moreover, Mr. Dalmas' negative answer to the question of whether he had knowledge of any prior accidents would have strengthened defendants' contention that Mrs. Christoforou fell since she did not look where she was walking, rather than because of the lighting. This court stated in Stein v Trans World Airlines (25 AD2d 732 [1st Dept 1966]) that: "Such evidence [of whether there had been prior accidents] is relevant and often persuasive on the question of whether a given condition should be classified as dangerous".

Second, as to the charge. Since the plaintiffs, as mentioned supra, presented no evidence that defendants had violated the Administrative Code, "[i]t [was] prejudicial error to charge [the] statute where there [was] no evidence to support a finding that the statute was violated" (Wilmot v City of New York, 73 AD2d 201, 204 [1st Dept 1980]).

We find these two errors prejudicial and, therefore, a remand for a new trial would normally be justified. However, additionally, upon review of this record it is crystal clear that the plaintiffs have not carried their burden of proving a prima facie case, from which a jury could rationally infer that a lack of care on the part of defendants caused Mrs. Christoforou to fall. The Court of Appeals of this State held in Quinlan v Cecchini (41 NY2d 686, 689 [1977]), "Of course, it is still the * * * court which, in the first instance must determine whether the facts will support a negligence finding as a matter of law".

It is undisputed that a 40-watt fluorescent light was located in a ceiling fixture within approximately 10 feet of the steps

on which Mrs. Christoforou tripped. Furthermore, Mrs. Christoforou herself testified: (1) that she had been in this building before the accident, and that she had used the passenger elevator on this earlier occasion. As mentioned *supra,* Mr. Dalmas had testified that the passenger elevator was located along the corridor to the telephone. These facts indicate to us that Mrs. Christoforou had a prior familiarity with this general area; and, (2) that, as she approached the telephone, her eyes were concentrated mostly on the telephone. Moreover, the plaintiffs offered no expert testimony to rebut the defendants' evidence that the hallway was adequately lighted.

It is basic that one alleging inadequate lighting must show a breach of a duty of reasonable care and that such breach was the proximate cause of the injuries *(Quinlan v Cecchini, supra).* Other than plaintiff's testimony that the lighting was dim,* no objective proof was submitted from which the jury could conclude there was an absence of due care. Plaintiff failed to establish that a lack of lighting was the proximate cause of her accident.

Examination of the dissent indicates no relevant legal authority that supports the conclusion that, based upon the facts of the instant case, an issue of fact had been created by Mrs. Christoforou's testimony that should have been submitted to the jury. As mentioned *supra,* in pertinent part, Mrs. Christoforou testified that as she walked down that hallway her eyes were concentrated on the telephone at the end of the hallway, and not on where she was walking. Furthermore, in our view, the dissent engages in pure speculation, which is unsupported by the record, when it contends that a shadow may have been cast and that she was being guided down that hallway by the doorman, to such an extent that she had surrendered control of her movements to him *(see,* for example, Mrs. Christoforou's testimony at pages 32-34 of the transcript of trial, which appears in the record on appeal, concerning her relationship to the doorman while she was walking down that hallway). We find that such speculation is not a substitute for the facts.

Moreover, we reject as unsupported by the record, the contention of the dissent that there are issues of fact for the jury to resolve relative to the defendants' negligence.

Accordingly, we reverse and dismiss the complaint. Concur —Murphy, P. J., Sullivan and Ross, JJ.

---

* The record indicates that the plaintiff is 80 years old and suffering from glaucoma.

Kassal, J., dissents in a memorandum as follows: While I agree that the error in the jury instructions requires that the judgment be reversed and the case be remanded for a new trial, I disagree with the majority's conclusion that plaintiffs did not establish a prima facie case of negligence. To the contrary, whether there was a defect in the building, lack of due care by reason of the insufficiency of the lighting in the hallway or the absence of a handrail at the steps are all matters for the trier of the facts. The plaintiff's testimony was sufficient to enable the case to go to the jury and, contrary to the factual analysis by the majority, the issues of negligence, foreseeability, proximate cause and weight of the evidence all pose factual issues not to be decided by this court as a matter of law.

Without any support in precedent, the majority has departed from long-established jurisprudence in holding that, to make out a prima facie case of negligence, it was necessary to offer expert testimony on a matter clearly within the average person's common knowledge and experience. Whether the hallway lighting at the accident site was dark, dim or adequate was an issue for the jury. Plainly, an expert is not required to testify, as the plaintiff did, that the lighting was "too dark". The jurors can evaluate and decide that issue.

### FACTS

On July 13, 1981, at about noon, plaintiff Eugenia Christoforou, then 80 years of age, entered defendants' apartment building at 255 West 84th Street and inquired of the doorman whether there was a telephone inside. He directed her to a telephone at the end of a 100-foot hallway. As plaintiff walked toward the telephone, she could see it since there was a light at the end of the hall where the phone was located. However, she testified that the hallway corridor, which had a ceiling fixture with a 40-watt fluorescent bulb, was insufficiently lit. She testified, "Everything was so dark. The stairs was [sic] dark, and I walked to the telephone." As she walked toward the telephone, she told the doorman, "It's dark, too dark. I can't see it." He responded, "Go ahead. Go ahead. There is the telephone." When asked whether there was any other light in the hallway, she stated: "No. There was dim light on the ceiling floor of same [sic] light, very dark light, very small light. The ceiling over there was high."

As plaintiff proceeded toward the telephone, she stumbled on a two-step staircase midway in the hall, which she said she

could not see, located 10 feet from the fluorescent lighting. The stairs were the same "off-white" marble color as the rest of the tiled hallway floor. As she fell, she reached for a handrail but there was none at the area of the steps. Subsequently, she was taken to Roosevelt Hospital where she was diagnosed as having sustained a fractured heel, which allegedly resulted in marked limitation of motion.

Defendants' building superintendent, Reis Dalmas, testified that the lobby area was 100 by 30 feet and that, to reach the telephone, it was necessary to walk through a 100-foot long hallway, which was five feet wide. The marble steps are located halfway to the phone and there was a ceiling fixture with 40 watts of fluorescent lighting, 10 feet from the steps. Along the hallway were the door to the passenger elevator, mailboxes and doors to apartments. Near the telephone, there was another light fixture, either 20 or 40 watts.

### JURY INSTRUCTIONS

In instructing the jury, the court outlined the contentions of the respective parties, including plaintiffs' claims of insufficient lighting in the hallway and the absence of a banister alongside the two steps. The court directed the jury to consider the effect of the condition of the tile floor and the steps, which were identical in color. It also set forth defendants' claims that Mrs. Christoforou was familiar with the building, having been there before; there was adequate lighting in the lobby and hallway; and she fell because she did not pay attention to where she was going. The trial court charged the applicable law as to the duty of an owner to use reasonable care in maintaining the premises in a reasonably safe condition and, further, as to whether there was a defective condition which, because of their prior knowledge, defendants should have corrected: "You must determine whether or not the lighting was adequate. You must determine whether or not there was negligence."

In addition to the standard negligence instruction, the Trial Justice further charged the jury to consider Administrative Code of the City of New York § D26-19.03, which provides, in part:

"a. In every multiple dwelling and tenant-occupied two-family dwelling the owner shall provide electric lighting fixtures for every public hall, stair, firestair and fire tower on every floor, in accordance with the following requirements * * *

"(2) If a fluorescent lighting fixture is provided, it shall be capable of providing illumination of at least four watts cool white fluorescent light per 25 square feet of floor-area or fraction thereof. Each lighting fixture shall be provided with one or more lights of a total of not less than 20 watts. Where, under this requirement, the number of watts per fixture would exceed 40, one or more additional fixtures shall be provided and shall be located as may be prescribed by the department, except where the distance from the fixture to the farthest intersecting wall does not exceed 20 feet."

After reading this provision, the court instructed as follows: "With reference to a violation of this Section, I just read to you, I charge you that you may consider this as some evidence of negligence along with the other evidence in this case, provided that such violation was a proximate—was the proximate or one of the proximate causes of this accident."

I agree that the instruction, which did not conform to the standard pattern jury charge (PJI 2:29), was, as couched, misleading and amounted to prejudicial error. The trial court did not charge the jurors that they were to determine first whether plaintiffs had proved a violation of the Administrative Code and, if so, they could then consider it as some evidence of negligence, together with the other evidence in the case, and determine if the violation was a proximate cause of the accident. Here, the nature of the charge apparently concluded that there was a violation, which was not mere harmless error, especially since the parties are in sharp disagreement as to the applicability of the Administrative Code provision. Under the circumstances, since this erroneous charge may have influenced the jury, the judgment should be reversed and the matter remanded for a new trial.

### APPLICABLE LEGAL STANDARD

While I find no basis in the evidence for plaintiffs' contention that the condition of the stairs amounted to a trap, nevertheless, the proof was prima facie sufficient to pose a jury question on the separate and independent claim of negligence in that the owner had created a dangerous condition because of the inadequacy of the hallway lighting and the necessity for a handrail. Defendants, as building owners, had an obligation to provide sufficient lighting in the hallway, irrespective of plaintiff's status as a licensee or invitee under prior law (see, Basso v Miller, 40 NY2d 233, 240-241). Liability

on the part of an owner of real property is now measured by the standard of foreseeability, as in any negligence action.

In *Gallagher v St. Raymond's R. C. Church* (21 NY2d 554, 558), the Court of Appeals abandoned the old common-law rule that the owner of a building, open to the public, had no duty to provide sufficient lighting to the exterior of the building, concluding that the traditional rule "no longer expresses a standard of care which accords with the mores of our society." In so holding, Judge Keating, writing for the unanimous court, observed: "The public is entitled to a safe and reasonable means to enter and exit from an open public building. In this day and age, this should mean a lit path or stairway to the street [citation omitted]. Few public buildings are now without exterior illumination. People, especially the elderly, should not be required to risk their health or lives groping in the dark hoping to find a handrail by which they might guide themselves in safety to the public sidewalk. The burden on the owner for taking this simple precaution, in terms of the cost of electricity and maintenance, is slight compared to the injuries or worse that can be avoided." *(Supra,* p 558.)

While *Gallagher (supra)* pertained to the duty of an owner as to exterior lighting *(see also, Kaufman v Congregation of Knesses Israel Sea Gate,* 35 AD2d 722), the existence of a similar duty for interior lighting has also been recognized. Thus, in *Arango v Baron* (68 Misc 2d 274), plaintiff was a tenant in a multiple dwelling and fell on a stairway between two floors. She testified that the adjacent window on the landing of the stairs afforded little light and the lighting fixtures had not been operating for some time. She claimed that, when she fell, it was "pretty dark in there." Defendants disputed the contention that the lights were out of order. The court denied the motion to dismiss and submitted the case to the jury, concluding that the Court of Appeals, in *Gallagher,* had "illuminated the path" to be followed in terms of the duty to be imposed on an owner of a building *(supra,* at p 276).

The principles and underlying rationale expressed in both *Gallagher (surpa)* and *Basso (supra)* impose a duty of care upon a building owner to furnish adequate interior lighting. *(See also,* Multiple Dwelling Law § 37, entitled "Artificial hall lighting".) Clearly, the issues of proper compliance with that duty, foreseeability and proximate cause are matters for the trier of the facts. *(See, Quinlan v Cecchini,* 41 NY2d 686, 690; *see also, Reider v Whitebrook Realty Corp.,* 23 AD2d 691;

*Vergano v City of New York,* 286 App Div 1113; *Schneider v Associated Prudential Theatres,* 277 App Div 1046, *affd* 302 NY 759; *Silverman v Ulrika Realty Corp.,* 239 App Div 194, 195-196.) In resolving these issues, the jury may also consider her claim that the injury resulted while Mrs. Christoforou was following the instructions of defendants' doorman. In such a case, where an injury occurs as a consequence of following the instructions of defendants' employee in the use of defendants' premises by entering into "a dimly illuminated area", the issues of negligence and failure to warn are for the jury. *(Grossel v Lehrman,* 28 AD2d 1138; *Guenzberg v Heyman,* 5 AD2d 766, *lv denied* 4 NY2d 676; *see also, Miller v M. & D. Holding Corp.,* 277 NY 647; *Newey v Kinwood Realty Corp.,* 277 App Div 682, 686.)

In my view, the majority has erroneously held that plaintiffs did not make out a prima facie case. It is conceded that there was only one 40-watt fluorescent light, 10 feet from the steps. Mrs. Christoforou testified that the hallway corridor was "too dark" and that, although she could see the telephone, illuminated at the end of the hall, she could not see the steps, which were the same pale, off-white color as the floor. The jurors could also consider the additional fact that, as she approached the steps, with the fluorescent light now behind her, her body could cast a pale or shadow which would render the floor area even darker. The issues, namely, (1) was there adequate illumination and the location of the light in relation to the steps; (2) should there have been a handrail to aid persons in descending the steps; and, (3) was the danger, in terms of any defective condition, increased by the fact that the floor and marble steps were of the same pale, off-white color, were factual matters not to be determined as a matter of law.

By its conclusions, the majority has usurped the function of the jury through its fact-finding analysis of the evidence. Thus, my colleagues have decided that one 40-watt fluorescent light, positioned as it was in the hallway, provided adequate illumination and that there was no duty to locate a handrail next to the steps for safety in ascending or descending. The majority has also found that the injured plaintiff was not looking "where she was walking", thereby constituting comparative negligence in such an absolute degree as to bar any recovery. Assuming there were such culpable conduct by plaintiff, the percentages to be apportioned thereto and to defendant's negligence are factual issues, for the jury.

The evidence at trial relating to the occurrence was not controverted. Nevertheless, my colleagues refer to Mrs. Christoforou's unrefuted account of the events as mere allegations, thereby ignoring the undisputed evidence. Moreover, the majority has understated the extent of the claimed negligence by characterizing the action as one based upon "allegedly the dim lighting" in the hall. The theory of the pleadings is much broader. The amended complaint asserts that the defendants were negligent in failing to maintain the building in a reasonably safe condition. This was amplified in the original bill of particulars, which expressly referred to defendants' failure to adequately and properly light the premises. The amended bill charges, *inter alia,* negligence in the ownership, operation, maintenance and control of the building, in failing to maintain the building in a reasonably safe condition, allowing a dangerous defect to exist and failing to provide a banister or handrail at the area of the hallway steps. The majority does not address these claims of negligence.

### COMPETENCE OF LAY WITNESSES
### AS TO LIGHTING

Contrary to the conclusion by my colleagues, I believe Mrs. Christoforou's testimony was sufficient to pose a factual issue on the sufficiency of the lighting in the hallway corridor. Whether the area was "too dark" so as to constitute a dangerous defect was a factual issue. This has always been the law. In *Mulligan v New York Athletic Club* (302 NY 705), plaintiff, 80 years of age and hard of hearing, was a visitor at defendant's athletic club, when she fell into a pit from the gallery above the handball court, described as "semidark". A member of the club who witnessed the accident testified that he tried to warn plaintiff but was not sure if she heard him. The Court of Appeals unanimously affirmed this court's affirmance of the jury verdict for the plaintiff. As far as appears, no expert testified and none was required, the only testimony being that of lay witnesses.

In *Schneider v Associated Prudential Theatres (supra),* plaintiff sued to recover for personal injuries suffered as the result of a fall in a movie theatre. The stairway in the theater which led to a passageway in the rear of the loge seats was lit, but plaintiff testified that the lighting in the passageway was "very dim" and that she could not see the carpet or the floor. Since no usher was there, she proceeded 20 to 25 feet, next to

a railing, and fell down the aisle which led to the seats. Plaintiff's testimony in that case was remarkably similar to that of Mrs. Christoforou here—that the lighting was "very dim" and "it was too dark to see a step if one was there." The Court of Appeals unanimously affirmed the judgment for plaintiff following a jury trial. Again, it appears that no expert testified and none was required.

In *Silverman v Ulrika Realty (supra)*, plaintiff stumbled against a step in the vestibule in defendant's building, which plaintiff testified was "pitch dark". This court found error in the trial court's instruction that if the plaintiff proceeded from the street into the vestibule, conscious of the darkness, he was contributorily negligent as a matter of law. It concluded that this was tantamount to the direction of a verdict in favor of defendant, holding: "The question of the plaintiff's negligence should have been submitted to the jury as an issue of fact to be determined in accordance with the jury's conception of ordinary care * * * To hold that the plaintiff was negligent as matter of law in proceeding through a vestibule or hallway in which the defendant had failed to furnish light is, in effect, to accord to the owner immunity from the consequences of the violation of the statute no matter how willful or persistent it may be." *(Supra,* at p 195.)

In *Schneider v Carnegie Hall Corp.* (54 AD2d 897), plaintiff, in Carnegie Hall, was walking in a balcony aisle toward her seat when she tripped while proceeding down a step located near a door, outside which there was a bright light. She claimed and there was proof that the lighting in the aisle where the accident occurred was "very dim". The Appellate Division, Second Department, unanimously reversed the dismissal of the complaint and ordered a new trial, holding, as a matter of law, that there was no basis to dismiss. Although the court in that case was concerned about plaintiff's contributory negligence, our case is governed by comparative negligence—again, a jury matter.

Thus, the observations highlighted by the majority here that Mrs. Christoforou had previously been in the building, suggesting that she was familiar with the area and that she was suffering from glaucoma, were additional matters to be evaluated by the jury in assessing comparative negligence. However, these facts, while they may be considered by a jury, are not dispositive on the issue of defendants' negligence, implicit in the majority's decision.

## NO NECESSITY FOR EXPERT TESTIMONY

Contrary to the novel conclusion of the majority, expert testimony was not admissible as to the adequacy of the lighting at the time and place of the accident on the issue of common-law negligence. Matters of common knowledge and experience are not susceptible to the opinion of an expert. *(See,* Richardson, Evidence § 367, at 340 [10th ed]; Fisch, New York Evidence § 413; *see also, Pipers v Rosenow,* 39 AD2d 240, 243.) Expert testimony may be offered "on matters dealing with skills, arts, science, business, technology and medicine." (Fisch, *op cit.* § 414). The adequacy of the lighting here— whether it was "too dark", as plaintiffs allege, so as to create a dangerous condition or defect—is a matter "within the common knowledge and experience of jurymen" *(id.* § 413, at 264), not for expert testimony. A distinction must be drawn between the claim of common-law negligence, in regard to the adequacy of the lighting, and whether there was a technical violation of the Administrative Code—two separate and independent claims.

No expert, irrespective of qualifications, should be required to buttress the testimony of an injured plaintiff that a particular area was dark in order to make out a prima facie case. As recognized in the above cases, this is simply a matter of common knowledge. The determination by the majority runs counter to the firmly established and long-standing rule in negligence litigation that an expert is not required to testify as to matters of common knowledge—for example, a vehicle was traveling "very fast"; a slip and fall on a surface claimed to be "wet" or "slippery"; "windy" conditions; the temperature was "hot" or "cold"; the weather was "humid" or in countless other situations where one's senses are involved or where the operative standard is the exercise of due care. In *Pipers v Rosenow (supra,* at p 243), the Appellate Division, Second Department, observed that "as the area of common knowledge grows, so does the necessity for expert testimony to aid the jury diminish." In my view, the majority has retrogressed in its holding in this case.

Clearly, the jury could resolve any inference of negligence as to lighting conditions at the time of the accident since it was competent "to assess this evidence based on their own experience, understanding and observation." *(Corelli v City of New York,* 88 AD2d 810.) The issue does not call for "special scientific or professional education, training or skill"; jurors,

"on the basis of their day-to-day experience and observation," can comprehend and evaluate this question. *(Kulak v Nationwide Mut. Ins. Co.,* 40 NY2d 140, 148.) As observed in *Kulak* (p 148): "Absent such inability or incompetence, the opinions of experts, which intrude on the province of the jury to draw inferences and conclusions, are both unnecessary and improper [citing cases]" *(see also, Marquart v Yeshiva Machezikel Torah D'Chasidel Belz,* 53 AD2d 688, 689).

Similarly, in *Havas v Victory Paper Stock Co.* (49 NY2d 381), the Court of Appeals held that expert testimony was not required with respect to the adequacy of an unsecured ramp in terms of safety. The make-shift ramp had been used as a runway to manually move bales of wastepaper to a truck platform at a time when a hydraulic forklift, which was usually used for that purpose, was out of commission. Plaintiff, who was loading the bales, was injured when the ramp slipped and crashed to the ground. In reversing the order which had dismissed the complaint, the Court of Appeals held expert testimony was not needed on the adequacy of the ad hoc method of loading the truck, observing: "True it is that plaintiff neither offered nor produced expert testimony on these matters. But these consisted exclusively of facts whose significance could be well divined by laymen. Therefore, bearing in mind that modern juries are not bereft of educated and intelligent persons who can be expected to apply their ordinary judgment and practical experience, expert testimony was not required. (McCormick, Evidence, § 13; see *Salem v United States Lines Co.,* 370 US 31, commented on in Lambert & Joost, Comments on Recent Important Admiralty Cases, 29 NACCA LJ 292, 335.)" *(Supra,* at p 386.)

These are settled precedents. No expert was needed, none could testify on the issue and to require such expert proof improperly invades the province of the jury. While the majority notes that there was no expert testimony "to rebut the defendants' evidence that the hallway was adequately lighted", this conclusion overlooks the fact that, in the same manner as plaintiff, the only proof offered on defendants' case as to the adequacy of the lighting and comparative negligence was the testimony of the superintendent, not qualified at the trial as an expert, that there was a 40-watt fluorescent light in the hall and that of another lay witness, the doorman (not the doorman on duty on the day of the accident), that Mrs. Christoforou had come to the building on prior occasions to

talk to him during lunch hour. There was no other evidence by defendants and no expert opinion.

## EVIDENCE OF ABSENCE OF PRIOR
## ACCIDENTS OVER LONG PERIOD OF TIME

I agree with the majority that defendants' superintendent, who had been at the building for 27 years in that capacity and who stated that the same lighting condition existed in the hallway for that period of time, could testify, in response to the claim that there was a dangerous condition, that others had passed through the hallway corridor without any prior accident during that period *(De Salvo v Stanley-Mark-Strand Corp.,* 281 NY 333, 338; *Stein v Trans World Airlines,* 25 AD2d 732; *compare, Orlick v Granit Hotel & Country Club,* 30 NY2d 246, 249-250). Taking into account the extensive period of time that the dangerous or defective condition was claimed to be present, the *De Salvo* rule is applicable and, as we observed in *Stein (supra):* "Such evidence is relevant and often persuasive on the question of whether a given condition should be classified as dangerous [citations omitted]".

Accordingly, I would reverse and remand the matter for a new trial based upon the erroneous instructions to the jury in which the court concluded that there was a violation of the Administrative Code. Inasmuch as it appears that defendants improperly failed to disclose the identity and whereabouts of the doorman on duty on the day of the accident and no valid excuse for such omission was presented, plaintiff should be granted leave to examine him prior to the retrial.