DECISION
Before the Court is Mr. Vasquez's motion for issuance of a preliminary injunction "preventing the defendants from alienating or encumbering property at 122 Fountain Street in Providence or any other potential assets . . ." (Motion of June 18, 2010).
 I Findings of Fact
The Parties have reserved their rights to a jury trial. Accordingly, the Court makes these findings of facts after a protracted motion hearing, and for purposes of the preliminary motion only.
On November 11, 2006, Gilberto Vasquez arrived at the 122 Fountain Street property at approximately 11 p.m. He was a patron at the bar, purchasing food and alcohol. At 2:00 a.m. on November 12, the bar closed for the evening and Mr. Vasquez left the premises. At some point, Mr. Vasquez was involved in an argument with another patron of the inn. Within 50 yards of the front door he was shot by a gun and seriously wounded. He is a paraplegic today, having gone through an extensive course of treatment (including surgeries) as a result of his injuries. *Page 2 
He has incurred tremendous pain and suffering, extended disability, and his medical treatment was extensive.
 Several different entities are involved with the
operations at 122 Fountain Street. The Sportsman's Inn, Inc.
(Sportsman's) is a corporation which operates a bar and provides
"entertainment" at the location. DLM, Inc. owns the building and
provides lodging at the location. In 2001, the individual owners of
DLM, Inc. sold their shares to a new entity, DLM Realty, LLC. (DLM).

David DeLuca, the president of Sportsman's and an owner of the DLM entities, testified at length. He did not know if rent was actually paid, or whether tax returns were filed. The various entities did not keep minutes regularly, nor do they hold regular elections. The only income for DLM Realty, LLC appears to be whatever rent is paid by Sportsman's.[1] The officers of all entities are similar, and the owners are similar as they are all family-owned businesses, though it is challenging to decipher who owns the issued shares, from the corporate books, now in exhibit. The corporate charter of DLM, Inc. was revoked on October 20, 2008. DLM Realty, LLC and Sportsman's are in the same building and share offices. DLM is not under-capitalized, it owns the building and has $30,000 in capital. The wealth of Sportsman's is unknown, but it has limited assets, and receives income from its lodging business. Sportsman's has some liability insurance but it is unlikely that the policy would provide coverage for all of Mr. Vasquez's damages, if the Defendants were found to be completely liable for the loss. *Page 3 
 II Conclusions of Law
In National Hotel Associates ex rel. M.E. Venture Management,Inc. v. O. Ahlborg Sons, Inc., 827 A.2d 646, 652 (R.I. 2003) guides this Court in determining when a corporate entity should be disregarded. In National a property owner brought a fraudulent transfer action against a corporation's sole stockholder and a successor corporation, alleging that the assets of the corporations had been transferred to avoid payment on a judgment. The High Court held:
 [If] two corporations are affiliated through common stock ownership, each will be considered a separate and independent entity "unless the totality of the circumstances surrounding their relationship indicates that one of the corporations `is so organized and controlled, and its affairs are so conducted, as to make it merely an instrumentality, agency, conduit, or adjunct of [the other].'" Vucci v. Meyers Brothers Parking System, Inc., 494 A.2d 530, 536 (R.I. 1985) (quoting United Transit Co. v. Nunes, 99 R.I. 501, 508-09, 209 A.2d 215, 219 (1965)). The criteria for piercing the corporate veil to impose liability on non-corporate defendants vary with the particular circumstances of each case. Doe v. Gelineau, 732 A.2d 43, 48 (R.I. 1999). However, "when the facts of a particular case render it unjust and inequitable to consider the subject corporation a separate entity" we will not hesitate to disregard the corporate form and treat the defendant as an individual who is personally liable for the debts of the disregarded corporation. R B Electric Co. v. Amco Construction Co., 471 A.2d 1351, 1354 (R.I. 1984). Thus, in circumstances in which there is such a unity of interest and ownership between the corporation and its owner or parent corporation such that their separate identities and personalities no longer exist we have held that "[a]dherence to the principle of their separate existence would, under the circumstances, result in injustice." Muirhead v. Fairlawn Enterprise, Inc., 72 R.I. 163, 172-73, 48 A.2d 414, 419 (1946). In those situations the corporate form is disregarded and liability is determined by justice and fairness.
 In evaluating the degree of separateness between two corporations, we look to the totality of the circumstances and examine such factors as stock ownership, capitalization, dual office holding and directorships, financial support or dependence, a lack of substantial business contracts independent from the other corporation and a domination of finances, policies and practices. Vucci, 494 A.2d at 535. National Hotel Associates ex rel. M.E. Venture Management, Inc. v. O. Ahlborg Sons, Inc., 827 A.2d 646, 652 (R.I. 2003). *Page 4 
In determining whether to issue a preliminary injunction, this Court considers the time honored factors, recently set forth by the Rhode Island Supreme Court:
 [I]n deciding whether to issue a preliminary injunction, the hearing justice should determine whether the moving party (1) has a reasonable likelihood of success on the merits, (2) will suffer irreparable harm without the requested injunctive relief, (3) has the balance of the equities, including the possible hardships to each party and to the public interest, tip in its favor, and (4) has shown that the issuance of a preliminary injunction will preserve the status quo. Foster Glocester Regional School Bldg. Committee v. Sette, 996 A.2d 1120, 1124 (R.I. 2010), (citing Iggy's Doughboys, Inc. v. Giroux, 729 A.2d 701, 705 (R.I. 1999))
 III Analysis A. Likelihood of success.
Mr. Vasquez claims that he has demonstrated a likelihood of success, there is a need for security, and the corporate formalities of the three entities should be disregarded. Specifically reviewing the factors noted in National Hotel, supra, the court finds the overall finances of the two entities are closely intertwined, there is a unity of interest, there is a unity of stock ownership, but only DLM, Inc. is sufficiently capitalized. Between the various entities there is dual office holding for officers and directors, the financial support of DLM is generated by whatever rent is paid by Sportsman's, and no independent business contracts are known (other than the businesses which the two entities do by virtue of their relationship with one another).
More troubling is the issue of liability itself. The emergency medical technician who testified concerning the location of the incident, testified that Mr. Vasquez was found within several feet from the front door of the Sportsman's Inn. His memory of specific events for the evening was less than vivid. Mr. Vasquez has no recollection of the shooting and the police *Page 5 
reports are not precise as to how or where the incident occurred. Hence, while Mr. Vasquez has shown, at this preliminary stage, that he was injured near the door, that showing may not be sufficient at trial.
Mr. Vasquez has, however, demonstrated a likelihood of success which is ample enough to subject the Defendants to liability under traditional negligence principles. While a landowner is not an insurer of the safety of those who enter on his property, when a landowner invites a person to enter on his premises, he has the duty to use reasonable care to keep the premises in a safe conditions.See Rothier v. Gaudet, 689 A.2d 407 (R.I. 1997) andDodge v. Church of the Transfiguration,106 R.I. 342, 259 A.2d 843 (R.I. 1969).
Plaintiff's counsel has repeatedly referenced G.L. 1956 § 3-5-23 as modifying the duty of care owned by an establishment which sells alcohol. The statute is premised on criminal violations by the establishment or discipline to the licensee by the licensing board. None of that has been shown to have occurred. Accordingly, while a likelihood of success has been shown, it is not a clear or convincing showing. The evidence presented shows a likelihood, not an imminent victory.
 B. Status Quo
A preliminary injunction seeks to preserve and protect the relationship between the various parties until later proceedings afford them with an opportunity for trial. Mr. Vasquez simply seeks to ensure that the assets of the Defendants are not distributed prior to trial. He seeks a mere prohibitive injunction, rather than a mandatory one. The injunctive relief would, therefore, preserve the status quo. *Page 6 
 C. Irreparable harm
In a word, Mr. Vasquez's damages appear to be enormous. If he is completely successful at trial, there is a possibility the judgment will be well in excess of the current value of the three businesses. While there is commercial liability insurance for one of the businesses, that coverage may be limited by a policy exclusion for an assault and battery.
Mr. Vasquez alleges that irreparable harm would be incurred by the Defendants conveying their real estate. It is reasonable to infer that the proceeds from the sale of the realty would be promptly distributed to the members and shareholders, given that the operation of the businesses at the Fountain Street location are the only current operations of the business entities.[2] Failing to preserve available assets could, therefore, result in irreparable harm to Mr. Vasquez.
 D. Balancing of the equities
While the potential irreparable harm to Mr. Vasquez is significant, there is more to this equitable balance. Requiring a private entity to retain its real estate in a fluctuating commercial real estate market is risky business. It could prove detrimental to the Defendants and their owners, or to Mr. Vasquez. The Court should not only consider the risk to the moving party, but the resultant harm which the order may pose to the non-moving party, and the public interests.
Preventing an owner from conveying or encumbering the property obviously impairs the owner's ability to use his own property. Property rights are paramount in constitutional law (seePayton v. New York,445 U.S. 573, 601, 100 S.Ct. 1371, 1387, 63 L.Ed.2d 639 (1980) ("[R]espect for the sanctity of the home . . . has been embedded in our traditions since the origins of the Republic"). In this action, an all-inclusive order may impair the defendants from conveying their real estate for a protracted period, leaving their fate to Mr. Vasquez as he edges *Page 7 
toward trial. Therefore, it is reasonable to limit the breadth of the restraining order to the extent it limits the use of private property.
 Conclusion
For the reasons stated, the Court will issue a Preliminary Injunction preventing the Defendants from encumbering, alienating or conveying the real estate on Fountain Street in Providence until further order of this Court. However, the Court issues this Injunction with two significant limiting terms.
First, the Parties are free to return to the Court for reasonable modifications of this Injunction. For example, Defendants may be able to procure a buyer, liquidate their holdings and leave the net proceeds in a location available for a future judgment, the Court will consider that proposal.
Second, the Preliminary Injunction shall expire one year from the date of its issue. Leaving the property in limbo for a protracted, undetermined time is unfair to the property owners. They must be able to obtain a resolution of this controversy within a reasonable time. This case was filed sixteen months ago. It is unnecessary and inequitable to restrict the Defendants from using their property for a protracted, indefinite period. Extensive discovery has already been conducted. An additional year allows for further discovery, alternative dispute mediation and trial.
Therefore, the Plaintiff's motion for a Preliminary Injunction is granted. Defendants are enjoined and restrained from alienating, conveying or encumbering their real estate on Fountain Street in Providence until further order of this Court, or one year from the date of Entry of this Decision, whichever occurs first. Plaintiffs counsel shall prepare and submit any necessary orders to effectuate this Decision.
[1] While an accountant and an attorney also testified regarding the formalities of the entities, it is interesting to note that Mr. DeLuca was unsure whether rent was actually paid, he did not believe annual reports were regularly filed, and was unfamiliar with the minutes and elections.
[2] Transferal or proceeds after any sale could be restricted by future orders of this Court.