IRMA COLON, Individually and as Administratrix of the Estate of JULIO COLON, Deceased, Respondent, *v.* BRIDGE PLAZA RENTAL CORP., Appellant.

First Department, November 19, 1974.

14

*Benjamin H. Siff* of counsel (*Thomas R. Newman* with him on the brief; *Whalen & O'Neill,* attorneys), for appellant.

*William F. Larkin* of counsel (*Sebastian Randazzo* with him on the brief; *Schofield, Dienst & Allean,* attorneys), for respondent.

LUPIANO, J. This wrongful death action arose out of a night-time collision between the car operated by the decedent, Julio Colon, and the trucks of the defendant that were stopped on the Cross Bronx Expressway in connection with Broadway Maintenance Company's work of replacing burned-out overhead light bulbs on the city's highways. Broadway Maintenance, in patrolling the highways to look for outages, burnouts, broken lamps and similar defective and inoperative equipment relevant to overhead illumination, utilized trucks owned by the defendant. The patrol sent out by Broadway Maintenance

which was involved in the accident, consisted of a bucket truck and two backup trucks, the latter being approximately 7,250 pounds each. The bucket truck was painted white, had revolving lights and flashers and a boom and bucket in which the repairman is elevated to the necessary height for effectuating repairs. Each backup truck was painted yellow, had electrified signs bearing the legends "SLO" and "MEN WORKING", electrified arms pointing to the legends, red and yellow flasher signals and a step and bumper providing access to the rear. Observing an outage under part of the McCoombs Dam overpass over the left of the three lanes on the eastbound Cross Bronx Expressway, the bucket truck stopped to make the repair. Backup truck No. 640 stopped about 30 to 40 feet behind the bucket truck and backup truck No. 649 stopped about 30 feet behind No. 640. Testimony indicated the lights of all trucks were on. Additionally, flares were lit and placed on the step or platform located at the rear of No. 649. This activity occurred shortly before 2:00 A.M. on July 23, 1969. After replacing the first outage, the bucket truck moved up to a second outage with the backup trucks remaining stationary, all vehicles being in line in the left lane.

The decedent, a detective in the New York City Police Department, while operating his 1967 Oldsmobile, collided with the rear of truck No. 649 and subsequently with the right side of truck No. 640. As a consequence of the impacts, the rear of No. 649 was ripped apart, decedent's vehicle was severely damaged and the right side of No. 640 was dented in. Apparently there were no eyewitnesses. Reconstruction of the accident tended to show that the Colon vehicle struck the back of the last backup truck (No. 649) in the right rear, careened off and collided with the right side of the next backup truck (No. 640). The force of the collision pushed truck No. 649 forward and shifted it toward the center mall, with its rear out into the center lane. Truck No. 640 was also moved by the impact. Four skid marks, each about 50 feet long, were present, beginning 109 feet west of the overpass and proceeding east for about 25 feet, where they forked into a set of marks curved toward the right into the center lane and a set of two marks going straight ahead in the left lane.

At trial, over objection, plaintiff's expert was permitted to testify that the decedent was traveling in the left lane when he "was suddenly confronted with a hazard, he attempted evasive action by veering sharply to the right, but lacking sufficient time, lacking sufficient opportunity and distance, he

collided with the corner of the parked truck'' and that ''the driver of the car did not have advance warning to get out of the blocked lane and for that reason, as he drove along he could see the danger or hazard only when his headlights picked it up''. This testimony directly bears on the critical issue of adequate warning and exceeds the perimeter of proper opinion evidence. '' It may be broadly stated as a general proposition that there are two classes of cases in which expert testimony is admissible. To the one class belong those cases in which the conclusions to be drawn by the jury depend upon the existence of facts which are not common knowledge and which are peculiarly within the knowledge of men whose experience or study enables them to speak with authority upon the subject. If, in such cases, the jury with all the facts before them can form a conclusion thereon, it is their sole province to do so. In the other class we find those cases in which the conclusions to be drawn from the facts stated, as well as knowledge of the facts themselves, depend upon professional or scientific knowledge or skill not within the range of ordinary training or intelligence. In such cases not only the facts, but the conclusions to which they lead, may be testified to by qualified experts '' (*Dougherty* v. *Milliken,* 163 N. Y. 527, 533). The circumstances herein are such that a jury could form a conclusion as to the issue of adequate warning and therefore the expert witness should not have been allowed to express an opinion on that question. A further example of improper opinion evidence elicited from plaintiff's expert was the statement that '' in [his] opinion [the back-up truck] should not have been stopped or parked on a highway. The word slo indicates that it was moving although slowly. There was insufficient notice to a driver to get out of the lane because going down a road, one doesn't know in which lane the truck may have been parked.'' Patently under these circumstances the *facts* may be stated by the expert, but the *conclusions* are to be drawn by the jury.

The trial court in its charge instructed the jurors to consider section 156 of the Traffic Regulations of the New York City Department of Traffic and the Traffic Regulation Manual referred to therein in regard to the duty owed by the defendant. Section 156, entitled '' Work Affecting Traffic '' provides in pertinent part: '' The regulations contained in the Regulation Manual on Temporary Traffic Control by Street Barricades and Channelization promulgated by the Department of Traffic shall be complied with by public and private organizations

when temporary disruption of street traffic is required for street repaving or repairs, subsurface utility line installations or other repairs and similar projects ".

The court read excerpts from the Traffic Regulation Manual charging that:

" ' This manual outlines the traffic control methods to be [complied with by] public and private organizations when temporary disruption of street traffic is required for street repaving or repairs, subsurface utility line installation or repairs or similar object.'

" And under method of procedure: ' Traffic control is accomplished by channelizing traffic with barricades and the judicious use of other devices such as traffic cones, warning lights, signs, flares, lanterns, et cetera.'

" In other words, they don't tell you exactly what to use but they call this method a procedure.

" Also under the heading of Traffic cones it states, ' Rubber traffic cones may be used.' It doesn't [say] must. It says, ' May be used to guide the vehicles around the work area.' They supplement the barricades at the excavation but must not be used as a substitute for barricades.

" Now here of course, there was no excavation. Their placement can be rapid and they are not hazardous to moving vehicles. Cones — however effective in daylight light must be reflectorized if used by night — at night rather. It's also under the title, ' Hazard warning light: Portable flashing beacons are to be employed to warn motorists in advance of the work area and for marking severe or unexpected obstructions or hazards in or near the roadway. Such flashing beacons must be mounted at a height of at least 30 inches but not more than 40 inches above the roadway surface.' ''

Two hours after the jury began its deliberations. it requested a copy of the Traffic Regulation Manual and the jury was, as a consequence, reinstructed as to the Traffic Regulation above delineated and had the charge with respect to the manual reread by the reporter. Shortly thereafter the foreman requested a repetition of the charge on the method of channelizing traffic when using flares, etc. This regulation in the manual was again reread to the jury. Exception was taken to this charge on each occasion.

Patently, section 156 of the Traffic Regulations and the various regulations of the Traffic Manual read to the jury constituted the foundation for the jury's finding of negligence. However, the regulations are not applicable herein and the charge

was therefore erroneous. Scrutiny of the charged parts of the Traffic Manual and of section 156 of the Traffic Regulations impels the conclusion that the intendment of such controls is not relevant to a stoppage for a few minutes to replace an overhead burned-out bulb. The phrase " disruption of street traffic " relates directly to " street repaving or repairs, subsurface utility line installation or other repairs and similar projects ". These " other repairs and similar projects " clearly refer to activities similar to street repaving, street paving, subsurface utility line installations, or activities requiring an excavation or opening in the roadway which require the flow of traffic to be directed away from the affected area. For example, the manual self-evidently, deals with repaving, storage material, building material, keeping traffic and its congestion to a minimum, procedures relevant to outlining an excavation or construction area in the street, and supplying flagmen when there is traffic congestion. Parenthetically, it is also noted that, even assuming section 156 of the Traffic Regulations and the manual did apply, the charge is misleading in that it appears to mandate the use of barricades and would warrant the failure to observe the regulations negligence as a matter of law, whereas this would be a factor bearing on the totality of circumstances permitting a factual finding by the jury of negligence.

Finally, it is observed that the trial court should not have rejected the testimony offered by defendant to establish custom and usage in this particular trade, namely, the repair of outages on the city's highways. General usage or custom is competent, although not conclusive, to show either ordinary care or the failure to exercise such care when a question of negligence is involved (*Garthe* v. *Ruppert,* 264 N. Y. 290, 296).

The judgment of the Supreme Court, Bronx County, entered May 6, 1974, after jury trial before BRUST, J., in favor of the plaintiff, should be reversed, on the law, with costs and disbursements to abide the event, and the matter remanded for a new trial.

McGIVERN, P. J., MARKEWICH, KUPFERMAN and STEUER, JJ., concur.

Judgment, Supreme Court, Bronx County, entered on May 6, 1974, unanimously reversed, on the law, and vacated, and the matter remanded for a new trial, with $60 costs and disbursements to abide the event.