NORA WILMOT, Respondent, v CITY OF NEW YORK, Appellant; JENY CAB CORP., Respondent, et al., Defendant.

First Department, March 20, 1980

## APPEARANCES OF COUNSEL

*Bernard Burstein* of counsel *(Domenick Ziccardi* with him on the briefs; *Allen G. Schwartz,* attorney), for appellant.

*Richard E. Shandell* of counsel *(Katz, Shandell, Katz & Erasmous,* attorneys), for Norma Wilmot, respondent.

*Lester Raskin (Adolph B. Salib* with him on the brief; *Raymond J. MacDonnell,* attorney), for Jeny Cab Corp., respondent.

## OPINION OF THE COURT

FEIN, J. P.

This is an appeal by the City of New York (City) from a judgment entered on a jury verdict awarding plaintiff $90,000 against the City and the Jeny Cab Corp. (Jeny), and apportioning the damages 40% against the City and 60% against Jeny.

It is undisputed that plaintiff was injured when the taxi in which she was a passenger struck the rear of a stopped unmarked police patrol car in the southbound lanes of the elevated Bruckner Expressway in The Bronx, where four lanes merge into three. Although all four witnesses to the accident agreed that the taxi struck the police car in the rear, there is a dispute as to the lane in which the police car was stopped. Plaintiff, who admitted she was not paying attention to the road, testified that the impact occurred in the right-hand lane, not the middle lane. James Brown (Brown), the taxi driver, averred that the accident occurred in the middle lane. He testified that after successfully avoiding a parked car in the right lane, his taxi struck the police car, which was stopped in the middle lane of the highway 75 feet south of the first car. Brown testified that he did not have a chance to slow down. As he passed the parked car he noticed a man and a woman by the guardrail and when he looked back at the road the police car was only 20 feet in front of him. Brown said that no flashing lights or tail brake lights were operating on the police car when the accident occurred.

Officer Muti, the driver of the police car, testified that the accident took place in the right lane, 250 feet in front of the standing car. Officer Muti stopped his police car because he saw the passenger automobile stopped in the right lane and a man and a woman standing in the highway in front of the stopped car. The man appeared to be waving at Muti to stop. According to Muti, the police car was traveling 50 miles an hour in the left lane when he passed the stopped car. Muti said he brought his car to a "slow gradual stop", steering it from the left to the right lane, and that his vehicle had "just" stopped when it was hit. Muti's partner, Officer Purcell, testified it took 15 seconds for the police car to be slowed to a stop, and when Muti operated the brakes the rear brake lights operated as did the flashing tail lights.

It is clear that there was a sharp dispute as to where the accident occurred, whether the police car brake lights were operating, and when and where the police car stopped. Since

the verdict was for the plaintiff we must view the evidence in the light most favorable to her *(Osipoff v City of New York,* 286 NY 422) that the police car had stopped in the middle lane in front of the taxicab and that its rear brake lights and flasher were not working. We are agreed that there was plainly a jury issue as to whether the defendant City was negligent and whether such negligence was a proximate cause of the accident *(Commisso v Meeker,* 8 NY2d 109; *Stratton v Miller,* 32 AD2d 687; see *Petosa v City of New York,* 52 AD2d 919; *Starks v Poulein,* 57 AD2d 645).

However, we have concluded there was an error in the charge which requires reversal and remand for a new trial as to liability and apportionment against the City.

Over objection, the court charged the jury as follows:

"Then there is Section 81A of the Traffic Regulations of the City of New York, and I will read you that, 81A. Section 81 is entitled 'Stopping, Standing and Parking Prohibited in Specific Places. No person shall stop, stand or park a vehicle except when necessary to avoid conflict with other traffic or in compliance with law or the directions of any police officer or transportation administration employee authorized to enforce these regulations in any of the following places unless otherwise indicated by traffic control devices.'

"And Subdivision 5A says, 'Within a highway, tunnel or upon an elevated or limited access roadway where all lanes are normally available for moving traffic. The stopping, standing or parking of a motor vehicle caused by lack of fuel shall constitute a violation of this section.'

"I give you these sections for your consideration. If you find from all of the circumstances in the evidence that you have listened to that either of the defendants or both of the defendants have violated any of the provisions of the Vehicle and Traffic Law that I have read to you or the Traffic Regulations of the City of New York, then you may consider the evidence of negligence along with all of the other facts and circumstances of this case and the testimony that you have heard."

There was an exception to such charge. During the jury's deliberations, the jury inquired concerning this charge as follows:

"THE COURT: * * * Request number two is that you want to hear the New York City Motor Vehicle Law read by the Judge

again. Now, I take it you mean all of the regulations or statutes that I read to you during my charge; is that correct?

"MR. JACOBS: Just the City.

"THE COURT: Just the City?

"MR. JACOBS: Yes.

"MRS. GOLDSTEIN: It was a pamphlet.

"THE COURT: Yes. That was 81. That's this pamphlet that I have in my hand?

"MR. JACOBS: Yes.

"THE COURT: You tell me if this is the one that you were referring to. This is Section 81 of the Traffic Regulations of the City of New York and its entitled, 'Stopping, Standing, Parking, Prohibited in Specific Places.' And it reads as follows: 'No person shall stop, stand or park a vehicle except when necessary to avoid conflict with other traffic or in compliance with law or the directions of any police officer or transportation administration employee authorized to enforce these regulations in any of the following places unless otherwise indicated by traffic control devices.'

"And Subdivision 5A, which is applicable here, states: 'Within a highway, tunnel or upon an elevated or limited access roadway when all lanes are normally available for moving traffic. The stopping, standing or parking of a motor vehicle caused by lack of fuel shall constitute a violation of this section.'

"That is Subdivision 5A and that is the section or part of the section that would be in some way applicable to the facts of this case. Is that the section that you were referring to?

"MRS. GOLDSTEIN: Yes.

"THE COURT: All right. At this point then you should return to continue your deliberations."

Shortly thereafter the jury returned to the courtroom with a verdict in favor of the plaintiff in the sum of $90,000 against the City and Jeny and apportioned damages 40% against the City and 60% against Jeny.

It is prejudicial error to charge a statute where there is no evidence to support a finding that the statute was violated (*Carhart v Relmar Operating Corp.,* 66 AD2d 680; *Putnam v Lamoreaux,* 59 AD2d 974, 975; *Colon v Bridge Plaza Rental Corp.,* 46 AD2d 13, 18).

It is undisputed that there was a stopped vehicle on the expressway in the right-hand lane and that a man and woman were standing in front of the vehicle. Under the circumstances it was appropriate for the police car, albeit unmarked, to stop and determine why the vehicle was stopped and why its apparent passengers were standing on the roadway. Section 81-A of the New York City Traffic Regulations permit the police to direct a vehicle to stop, stand or park upon such a highway. Plainly this regulation authorized the police officer to stop the police vehicle he was operating in order to determine the basis for the actions of the man and woman and the stopped car on the highway. Moreover, section 1104 (subd [b], par 1) of the Vehicle and Traffic Law authorizes an emergency vehicle to stop, stand or park when involved in an emergency operation. A police vehicle is an authorized emergency vehicle within the meaning of the statute (Vehicle and Traffic Law, § 101). An emergency operation includes the "operation, or parking, of an authorized emergency vehicle, when such vehicle is * * * responding to, or working or assisting at the scene of an accident * * * or other emergency." (Vehicle and Traffic Law, § 114-b.) Subdivision (e) of section 1104 of the Vehicle and Traffic Law provides that the driver of a police car is not relieved from his duty to drive with "due regard for the safety of all persons".

It is manifest by virtue of these sections that the police officer had a right to stop the police vehicle to inquire when he observed a car parked on the expressway with its apparent passengers standing in the roadway in front of the vehicle looking for help. It is equally plain that it was the duty of the police officers in stopping their vehicle to do so with due care. It was error to read the regulation to the jury under the circumstances of this case. Plaintiff's suggestion that there was no proof the police directed themselves to stop is without merit. The purpose of the stop was clear, as was the duty to do so. The parties were entitled to a charge to the jury that it should consider whether the timing and the place of the stop were negligent, and if so, whether that negligence was a proximate cause of the accident. The charge as given, inviting the jury's attention to the regulation, suggested to the jury that a violation of that section was evidence of negligence. This was fundamental error. Moreover, it did not clarify for the jury the relevant issue presented by such stopping, namely whether the place where and the time when the

vehicle was stopped amounted to negligence which was a proximate cause of the accident.

The jury's inquiry concerning this regulation demonstrates that it must have had an effect on its deliberations.

Calling the jury's attention to the regulation could not aid in its deliberations and amounted to reversible error.

The same considerations are applicable even if the police vehicle stopped in the right lane as testified to by Officer Muti and the plaintiff.

Accordingly the judgment, Supreme Court, Bronx County (SILBOWITZ, J.), entered on December 6, 1978 on a jury verdict awarding plaintiff $90,000 against the City of New York and Jeny Cab Corp. and apportioning the damages 40% against the City and 60% against Jeny, should be reversed, on the law and the facts, so far as appealed from by the City and the action should be remanded for a new trial as to liability of the City and apportionment between defendants, with costs to abide the event.

BLOOM, J. (concurring). I am in agreement with my brethren that there must be a retrial for the purpose of apportioning the respective liability of the defendants. Although the City argues, forcefully, that the stopping of the vehicle driven by the police was not the competent and producing cause of the accident (Sheehan v City of New York, 40 NY2d 496; Ventricelli v Kinney System Rent A Car, 45 NY2d 950), the record has not been fleshed out sufficiently to warrant any such holding as a matter of law. The evidence dealing with the lane in which the collision occurred is conflicting. The record shows that both cars were in the right lane when the additional police arrived. Whether the police vehicle and the taxi, or either of them, had been moved after the impact and by how much they were separated at the time of the arrival of the other police car is not indicated. In these circumstances we are unable to say that the issue of proximate cause was not one for jury determination.

SULLIVAN, LUPIANO and SILVERMAN, JJ., concur with FEIN, J. P.; BLOOM, J., concurs in opinion.

Judgment, Supreme Court, Bronx County, entered on December 6, 1978, reversed, on the law and the facts, and the action remanded for a new trial as to liability of the City and apportionment between defendants, with $75 costs and disbursements of this appeal to abide the event.