JOAN SENN, Respondent, v LOUIS SCUDIERI, Respondent, D.L. RESTAURANT, INC., Doing Business as P.J. CLARKE'S, Appellant, et al., Defendants.

First Department, March 26, 1991

APPEARANCES OF COUNSEL

*Steve S. Efron* of counsel *(Cyperstein & Gerstner,* attorneys), for appellant.

*Richard T. Farrell* of counsel *(Ilene J. Miller* with him on the brief; *Dansker & Aspromonte Associates,* attorneys), for respondent.

### OPINION OF THE COURT

Ross, J.

Defendant, D.L. Restaurant, Inc., doing business as P.J. Clarke's, appeals from an amended judgment, entered after a jury found the defendant liable for violation of General Obligations Law § 11-101, commonly referred to as the Dram Shop Act.

Our examination of the Dram Shop Act indicates that the legislative intent is "twofold: (1) to deter tavern owners and those in their employ from selling alcoholic beverages to intoxicated persons; [and] (2) to provide a remedy to persons injured as a result of the sale of liquor under circumstances prohibited by the statute" *(Bartlett v Grande,* 103 AD2d 671, 672 [1984]).

Specifically, subdivision (1) of the Dram Shop Act, states: "[a]ny person who shall be injured in person, property, means of support, or otherwise by any intoxicated person, or by reason of the intoxication of any person, whether resulting in his death or not, shall have a right of action against any person who shall, by unlawful selling to or unlawfully assisting in procuring liquor for such intoxicated person, have caused or contributed to such intoxication; and in any such action such person shall have a right to recover actual and exemplary damages."

Since the Dram Shop Act created a cause of action unknown at common law, the provisions of that act must be strictly construed *(D'Amico v Christie,* 71 NY2d 76, 83 [1987]). In this connection, the courts of this State have consistently interpreted General Obligations Law § 11-101 as being "directed against commercial vendors and distributors of intoxicants rather than private hosts or employers" *(Greer v Ferrizz,* 118 AD2d 536, 539 [1986]; *D'Amico v Christie, supra,* at 83).

During the evening of June 22, 1985, at the intersection of 60th Street and Park Avenue, Manhattan, a taxi, operated by Mr. Jose Muriel (Mr. Muriel) and owned by Kow Cab Corp. (Kow Cab), collided with an automobile, operated by Mr. Louis Scudieri (Mr. Scudieri), and in which Ms. Joan Senn (Ms. Senn) was a passenger. Thereafter, Ms. Senn (plaintiff) commenced a personal injury action against Messrs. Scudieri and Muriel, Kow Cab, and D.L. Restaurant, Inc., doing business as P.J. Clarke's (Restaurant) to recover damages. Plaintiff alleges, in substance, in the amended verified complaint, that, while the negligence of both drivers caused the accident, the liability of the Restaurant rests on a violation of the Dram Shop Act, since, until shortly before the incident, Mr. Scudieri and the plaintiff had spent many hours drinking together, and defendant Scudieri was served alcoholic drinks, although he was obviously intoxicated.

Following the joinder of issue, a trial was held, resulting in a jury verdict, awarding plaintiff total damages in the amount of $1,750,000 consisting of $1,000,000 for conscious pain and suffering and $750,000 for impairment of future earning capacity. In the verdict, the jury apportioned liability as follows: 55% against Mr. Scudieri, 15% against the Restaurant, 10% against Mr. Muriel and Kow Cab, and 20% against plaintiff. After the entry of the amended judgment, defendant Restaurant appealed.

More than a quarter of a century ago, we held that, in order for a court to determine whether there has been an illegal sale of liquor within the meaning of the Dram Shop Act, that act must be read and considered in conjunction with Alcoholic Beverage Control Law § 65, entitled "Prohibited sales" *(Moyer v Lo Jim Cafe,* 19 AD2d 523 [1st Dept 1963], *affd* 14 NY2d 792 [1964]).

In 1985, at the time of the plaintiff's accident, the pertinent part of the Alcoholic Beverage Control Law read *(see,* Historical Note to McKinney's Cons Laws of NY, Book 3, Alcoholic Beverage Control Law § 65 [2], at 106):

"No person shall sell, deliver or give away or cause or permit or procure to be sold, delivered or given away any alcoholic beverages to * * *

"2. Any intoxicated person or to any person, actually or apparently, under the influence of liquor".

Plaintiff, in order to establish a prima facie case of the defendant Restaurant's liability, has the burden of presenting sufficient proof to lead to the reasonable conclusion that, when the Restaurant served intoxicating liquor to Mr. Scudieri, they were on notice that he was already "actually or apparently, under the influence of liquor" (Alcoholic Beverage Control Law § 65 [former (2)]; *Gonyea v Folger,* 133 AD2d 964, 965 [1987]; *Allan v Keystone Nineties,* 74 AD2d 992, 993 [1980]).

The duty, under the Dram Shop Act, imposed on the owner of an establishment selling intoxicating liquor, has been set forth as follows: "[o]ne in control or possession of the premises has the duty to control the conduct of those permitted or invited to enter upon the premises and such person in control is required to exercise it for the protection of others. This duty arises when the one in possession *knows that he can and has the opportunity to control the third party's conduct and is reasonably aware of the necessity of such control (De Ryss* v. *New York Cent. R. R. Co.,* 275 N.Y. 85)" *(Bartkowiak v St. Adalbert's R. C. Church Socy.,* 40 AD2d 306, 309-310 [1973] [emphasis supplied]).

█ Evidence that a person has consumed alcohol, and has the odor of alcohol on his or her breath, is not conclusive proof of intoxication *(Coleman v New York City Tr. Auth.,* 37 NY2d 137, 144-145 [1975]) since the effect of alcohol "may differ greatly from person to person" *(Burnell v La Fountain,* 6 AD2d 586, 590 [1958]). In other words, a factual determination of intoxication cannot be made solely on the basis of how much alcohol a person has consumed *(Baginski v New York Tel. Co.,* 130 AD2d 362, 365 [1st Dept 1987]).

Sometime between 4:30 P.M. and 5:00 P.M., on June 22, 1985, plaintiff and a friend, Ms. Ann Segrest (Ms. Segrest), entered the defendant Restaurant, and within a few minutes, Mr. Scudieri joined the two women at the bar, and began purchasing drinks for them.

At about 6:45 P.M., while plaintiff and Mr. Scudieri remained at the bar, Ms. Segrest left those premises. Ms. Segrest, testified, as a plaintiff's witness, and stated that, in her opinion, Mr. Scudieri was intoxicated, since he was hunched

over at the bar, his conversation was "erratic", and his speech was slurred. Ms. Segrest also concluded that the plaintiff was intoxicated.

Other than Ms. Segrest, the plaintiff was the only trial witness to testify that Mr. Scudieri was intoxicated, while in the Restaurant. Plaintiff testified that, after Ms. Segrest departed, she and Mr. Scudieri continued drinking at the bar for several hours. Further, as a result of that drinking, plaintiff testified she "felt pretty tipsy", and that Mr. Scudieri was intoxicated, since "he had been drinking for a long time with me [plaintiff] * * * [and he] was talking a lot, and he wasn't loud". Moreover, as far as plaintiff could remember that evening, Mr. Scudieri did not annoy any of the other patrons, he did not stagger, he did not smell of alcohol and his speech was not slurred. In fact, plaintiff testified that at all times she was together with Mr. Scudieri, including the time that they spent in the Restaurant, he "seemed like a nice guy", and behaved at all times "like a gentleman" in "the truest sense" of the word.

The only other trial witnesses, who testified that Mr. Scudieri was intoxicated, did not observe him while he was in the Restaurant. Two of those witnesses, Ms. Gail Freeman (Ms. Freeman) and Mr. Hani Assabqui (Mr. Assabqui), were taxi drivers, who alleged they witnessed the accident between Mr. Scudieri's automobile and Mr. Muriel's taxi.

In substance, Ms. Freeman testified that she believed that Mr. Scudieri was intoxicated, since he was hostile to her after the accident, in which he injured, *inter alia,* his scalp, and that, although he was coherent, he slurred his words, waved his arms, and smelled of alcohol. Further, Mr. Assabqui testified, in substance, that he believed that Mr. Scudieri was intoxicated, since he smelled alcohol on Mr. Scudieri's breath.

Dr. Morris Zedek, plaintiff's expert witness, testified that, when a person's blood alcohol level reaches .10, he or she is considered to be intoxicated. In answer to hypothetical questions, he gave his professional opinion that Mr. Scudieri's blood count was "almost .09".

Ms. Segrest's opinion of defendant's intoxication was based solely on the fact that Mr. Scudieri slurred his speech and she did not understand what he said, and the plaintiff's opinion of his intoxication was based on the fact that Mr. Scudieri and the plaintiff had been drinking together for a long time. We have held that the slurring of one's speech, in of itself, when

that person is at the same time coherent, is insufficient to conclude that person is intoxicated *(People [Complaint of Mulrean] v Fox,* 256 App Div 578, 579 [1st Dept 1939]). Further, as discussed *supra,* the single fact that alcohol has been consumed by a person, does not in of itself constitute intoxication *(Baginski v New York Tel. Co., supra).* Applying the legal authority, *supra,* to the eyewitness testimony, we find same insufficient to establish a prima facie case that the Restaurant violated its duty under the Dram Shop Act, when it sold liquor to Mr. Scudieri, since he neither "acted or appeared to be intoxicated at the time of the sale" *(Nehme v Joseph,* 160 AD2d 915, 916 [1990]; *Terbush v Buchman,* 147 AD2d 826, 827 [1989]; *Gonyea v Folger, supra,* at 965-966).

Moreover, we find that the plaintiff's prima facie case was not strengthened by the testimony of the two taxi drivers, and the plaintiff's expert, since the drivers simply collectively concluded that Mr. Scudieri was intoxicated, in view of the fact that he slurred his words and smelled of alcohol, while being hostile, but coherent, and the expert indicated in his testimony, discussed *supra,* that, in his opinion, Mr. Scudieri's blood alcohol level did not reach .10, which is the legal standard for intoxication.

Further, a police officer, who responded to the accident scene testified he had been trained to recognize signs of intoxication, and in the absence of such signs, he had no reason or evidence upon which to base an arrest, issue a summons, or call for a driving while intoxicated unit.

In addition to the testimony, discussed *supra,* the plaintiff offered documentary evidence, consisting of page 2 of a New York Hospital's emergency room record, relating to Mr. Scudieri. Page 2 is a radiology report, discussing the results of X rays taken of Mr. Scudieri's skull, and bearing the following undated, unsigned hand-printed notation "The patient is drunk and uncooperative!".

While it is undisputed that, shortly after the accident, Mr. Scudieri was taken to New York Hospital for treatment of, *inter alia,* his scalp injury, and that X rays of his skull were taken, Doctor Jeffrey Gorelick (Dr. Gorelick), the resident who treated him in the emergency room of that hospital and ordered the X rays, testified that during his examination of Mr. Scudieri, he found no indication that Mr. Scudieri was intoxicated. Further Dr. Gorelick testified that, if he had found any sign of intoxication, he would have ordered a blood test.

Over objection, the trial court admitted the radiology report, with the hand-printed notation described *supra,* into evidence, after hearing the testimony of Dr. Michael David Field Deck (Dr. Deck), vice-chairman of the Radiology Department of New York Hospital.

Dr. Deck testified that he had no personal knowledge of who made the hand-printed notation, but he had concluded that a Mr. Louis Valentino had made same, upon the basis of a signed statement, which he assumed was made by Mr. Louis Valentino, approximately one year after the date of the radiology report, which statement Dr. Deck found in a so-called "legal file" of the Radiology Department. Dr. Deck described that file as a repository for material concerning "all cases which have come to our attention where there has been some question of something of some procedural protocol". According to Dr. Deck, in that statement, *which was not produced in court,* Mr. Valentino allegedly stated that he was the X-ray technician on duty the evening of the accident, that he took the skull X rays, and that he made the subject hand-printed entry. Further, Dr. Deck admitted that, although it would be standard procedure for an X-ray technician to make an entry like the subject hand-printed notation, when a patient was unmanageable, so that there would be an explanation to the radiologist as to why an inadequate or incomplete set of X rays had been taken, the X rays of Mr. Scudieri's skull were satisfactory, and therefore Dr. Deck could not give any reason as to why Mr. Valentino allegedly would make such an entry.

CPLR 4518, entitled "Business records", is an exception to the hearsay rule, and in subdivision (a), it states, in pertinent part, that a Judge may admit into evidence any writing or record, which he or she finds "was made in the regular course of any business and that it was the regular course of such business to make it, at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter" *(see, People v Kennedy,* 68 NY2d 569, 578-580 [1986]; *Williams v Alexander,* 309 NY 283, 286-287 [1955]; *Ward v Thistleton,* 32 AD2d 846, 847 [1969]).

In *Williams v Alexander (supra,* at 286-287), the Court of Appeals summed up the purpose of the business record exemption to the hearsay rule, as follows: "The statute * * * is designed to harmonize the rules of evidence with modern business practice and give 'evidential credit' to the memoranda or other writings upon which reliance is placed in the

systematic conduct of business undertakings. * * * It rests upon the probability of trustworthiness which inheres in such records, by virtue of the fact, first, that they are the 'routine reflections of the day to day operations of a business' *(Palmer v. Hoffman,* 318 U.S. 109, 114) and, second, that it is the entrant's own obligation, and to his interest, to have them truthful and accurate, made and kept as they are with the knowledge, indeed, for the purpose, that they will be relied upon in the conduct of the enterprise. * * * It is this element of trustworthiness, serving in place of the safeguards ordinarily afforded by confrontation and cross-examination, which justifies admission of the writing or record without the necessity of calling all the persons who may have had a hand in preparing it".

■ After reviewing the hand-printed notation on the radiology report, and the testimony of Dr. Deck concerning same, we find that the trial court committed reversible error, when it admitted into evidence that notation, since the overwhelming evidence clearly indicates that that notation was not made in the regular course of business and that it was not in the regular course of such business to make same (CPLR 4518 [a]). Significantly, as mentioned *supra,* Dr. Deck admitted in his testimony that, in view of the fact that the X rays were properly taken, "I don't know why he wrote it". Further, we find of no evidentiary value the alleged statement of Mr. Valentino, who allegedly is deceased, which was allegedly made about a year after the X rays were taken, since, other than testifying that he found it in a file, Dr. Deck could offer no explanation of the circumstances which prompted same to be made.

■ Based upon our analysis, *supra,* we set aside the jury verdict against the Restaurant, for violation of the Dram Shop Act, vacate the amended judgment against that defendant, and remand for a new trial, since we find "that there is simply no valid line of reasoning and permissible inferences which could possibly lead rational men [and/or women] to the conclusion reached by the jury on the basis of the evidence presented at trial" *(Cohen v Hallmark Cards,* 45 NY2d 493, 499 [1978]).

Defendant Restaurant further contends that there was insufficient evidence in the record to justify the trial court instructing the jury, over objection, to consider whether Mr. Scudieri violated Vehicle and Traffic Law § 1192.

In pertinent part, the trial court charged the jury, concern-

ing various subdivisions of Vehicle and Traffic Law § 1192, as follows:

"I will just read the part *[sic]* that have general applicability here.

"1: No person shall operate a motor vehicle while his ability to operate such a motor vehicle is impaired by the consumption of alcohol.

"2: No person shall operate a motor vehicle while he has point 10 *[sic]* of one percentum or more by weight of alcohol in his blood as shown by chemical analysis of his blood breath, urine or saliva.

"3: No person shall operate a motor vehicle while he is in an intoxicated condition".

■ Further, Restaurant argues that, although the subject statute was charged in connection with Mr. Scudieri's operation of his vehicle, they were prejudiced, since the court's instruction conveyed the impression, unsupported by the evidence, that Mr. Scudieri was intoxicated to a degree, which would constitute a violation of subdivision (2) of the statute. There is nothing in the record to indicate a blood alcohol reading of .10, and accordingly it was error to charge Vehicle and Traffic Law § 1192 (2).

We have repeatedly held "it is prejudicial error to charge a statute where there is no evidence to support a finding that the statute was violated" *(Wilmot v City of New York,* 73 AD2d 201, 204 [1st Dept 1980]; *Christoforou v Lown,* 120 AD2d 387, 390 [1st Dept 1986]).

■ We are constrained to note that our examination of the trial transcript indicates that plaintiff's trial counsel, during his cross-examination of Dr. Mortimer Shapiro (Dr. Shapiro), improperly acted as an unsworn witness, by offering "unsworn statements [alleging] personal knowledge of the facts" *(Weinberger v City of New York,* 97 AD2d 819, 820 [1983]; *Caraballo v City of New York,* 86 AD2d 580 [1st Dept 1982]; *Kohlmann v City of New York,* 8 AD2d 598 [1st Dept 1959]).

Code of Professional Responsibility DR 7-106 adopted by the New York State Bar Association, effective January 1, 1970, reads:

"(C) In appearing in his professional capacity before a tribunal, a lawyer shall not * * *

"(3) Assert his personal knowledge of the facts in issue, except when testifying as a witness."

While plaintiff's medical experts testified that, in their opinion, plaintiff had suffered permanent damage, Dr. Shapiro, the defense neurologist and psychiatrist, testified that, in his opinion, she had not.

In order to attack Dr. Shapiro's credibility, we find that plaintiff's counsel improperly included what he alleged to be his personal knowledge of the facts in his questions, when he cross-examined Dr. Shapiro. In pertinent part, a portion of the cross-examination reads, as follows:

"QUESTION [by Mr. Dansker]: Now, how much testing did you do with Joan Senn [plaintiff], doctor?

"ANSWER [by Dr. Shapiro]: I believe the whole examination excluding the review of testimony took close to an hour.

"QUESTION: And if I tell you that I timed it, and it was 35 minutes?

"MR. GALLIN [defense counsel]: Objection. He is not here to testify.

"MR. DANSKER: Please, Judge, this is perfectly fair cross-examination if I said 35 minutes I would be wrong.

"THE COURT: Overruled.

"ANSWER: You are dead wrong.

"QUESTION: I am dead wrong. I am a lawyer".

Further, we find that plaintiff's counsel used the same improper technique, when he cross-examined Dr. Shapiro relative to that witness' direct testimony, concerning the "incredible swift" answers the doctor said he received from plaintiff during his medical examination of her, which answers were made by the plaintiff in response to the doctor's questions. In pertinent part, that portion of the cross-examination reads:

"QUESTION [by Mr. Dansker]: And you told us that she made calculations very fast instantaneously, and if I wrote down slow, then I am wrong?

"MR. GALLIN [defense lawyer]: Is he going to be a witness in this case?

"THE COURT: Objection overruled.

"MR. DANSKER: I was there. * * *

"QUESTION: But isn't it fair that we didn't have a different interpretation of fast or instantaneously? * * *

"ANSWER [by Dr. Shapiro]: The answer is I disagree with you."

Moreover, our review of the record indicates that plaintiff's counsel again improperly acted as an unsworn witness during his summation *(Siefring v Marion,* 22 AD2d 765, 766 [1st Dept 1964]). Specifically, counsel accused Dr. Shapiro of being "paid to lie", although we find no such evidence in the record, asked the jury to weigh his (plaintiff's counsel's) credibility against that of Dr. Shapiro, and vouched for the credibility of the plaintiff's three medical witnesses. In pertinent part, counsel stated: "you see Dr. Shapiro, and I am sorry to say the man was paid to lie in this case. He told you that he did an hour exam, I was there. My recollection that I timed it was 35 minutes, and he didn't even write down the same information that I wrote down. Now it is a matter of credibility. If you believe that man who was paid $800 for that examination and report and $3,500 to come down here to get in and out like a thief as against these 3 credible witnesses. You see the man argued with me, and I didn't even ask one question. He was jumping down my throat. None of my witnesses ever did that because they had nothing to hide".

Finally, a new trial is required since we find that plaintiff's counsel's conduct, discussed *supra,* was "calculated to influence the jury by considerations which were not legitimately before them, and cannot be dismissed as inadvertent, thoughtless or harmless" *(Kohlmann v City of New York,* 8 AD2d 598, *supra).*

It is interesting to note that plaintiff's brief concedes her trial counsel was "overenthusiastic". In fact, counsel's conduct, together with the other errors set forth *supra,* denied the defendant a fair trial.

We have considered the other contentions of the parties and find them to be without merit.

Accordingly, amended judgment, Supreme Court, New York County (David B. Saxe, J., with a jury), entered May 30, 1990, which found, *inter alia,* defendant D.L. Restaurant, Inc., doing business as P.J. Clarke's (Restaurant) in violation of General Obligations Law § 11-101 (Dram Shop Act), and apportioned Restaurant's share of liability for plaintiff's injury at 15%, is unanimously reversed to the extent appealed from, on the law and on the facts, and only as to defendant Restaurant the amended judgment is vacated, the jury verdict set aside, and the matter remanded for a new trial, with costs to abide the event.

MURPHY, P. J., MILONAS, ASCH and RUBIN, JJ., concur.

Amended judgment, Supreme Court, New York County, entered May 30, 1990, unanimously reversed to the extent appealed from, on the law, and on the facts, and only as to defendant Restaurant the amended judgment is vacated, the jury verdict set aside, and the matter remanded for a new trial, with costs to abide the event.