[643 NYS2d 238]

MARIE A. ROMANO et al., Respondents, v HORACE R. STANLEY, as Administrator of the Estate of NANCY A. STANLEY, Deceased, et al., Defendants, and MARTEL'S OF BROADWAY, INC., et al., Appellants.

Third Department, May 23, 1996

6

**APPEARANCES OF COUNSEL**

*Thuillez, Ford, Gold & Conolly,* Albany *(Michael J. Hutter* of counsel), for Martel's of Broadway, Inc., appellant.

*Kris T, Jackstadt,* Albany *(Michael M. Emminger* of counsel), for Jack's Oyster House, Inc., appellant.

*Seymour Fox, P. C.,* Troy *(Bonnie P. Chavin* of counsel), for respondents.

## OPINION OF THE COURT

YESAWICH JR., J.

This lawsuit has its origin in an automobile accident that occurred on January 18, 1991 in the Town of Colonie, Albany County, in which Nancy A. Stanley (hereinafter decedent) was killed and plaintiff Marie A. Romano (hereinafter plaintiff) was injured. Defendants Jack's Oyster House, Inc., Martel's of Broadway, Inc. and Dee Dee's Tavern, Inc. each own and operate a restaurant or tavern at which decedent had been drinking alcoholic beverages on the evening of the accident. The record discloses that after work that day, decedent proceeded to Jack's, where a birthday celebration for one of her co-workers was in progress, then to Martel's and eventually to Dee Dee's, and that she ordered at least one drink at each establishment. The accident occurred shortly after decedent left Dee Dee's at approximately 10:00 P.M.

Plaintiff and her spouse, derivatively, allege that each of these three defendants violated Alcoholic Beverage Control Law § 65 and General Obligations Law § 11-101, the "Dram Shop Act", by serving alcohol to decedent when she was visibly intoxicated. After issue was joined, Jack's and Martel's (hereinafter collectively referred to as defendants) each moved for summary judgment; Supreme Court's denial of those motions prompted this appeal.

In support of their motions, defendants tendered affidavits and deposition testimony which would, if unrebutted, be suf-

ficient to establish that decedent was not visibly intoxicated when she was served at their establishments. As a consequence, the burden shifted to plaintiff to submit evidence, in admissible form, demonstrating the existence of a material question of fact (*see generally, MacDougall v Kelsch*, 161 AD2d 886, 887).

To this end, plaintiff relies primarily upon the affidavit of Thomas Oram, a qualified forensic pathologist with extensive experience in the area of alcohol metabolism and its effects, gleaned from working with the State Police in the investigation of alcohol-related deaths and his own study of the effects of alcohol on the body. Having reviewed the tissue slides of decedent's liver and other internal organs, and considering the levels of alcohol in her blood (.26%) and urine (.33%) at the time of her death, Oram opined that decedent would have, and did, exhibit certain outward manifestations of drunkenness during the time periods when she was at Jack's and Martel's (*compare, Jones v Kelly*, 201 AD2d 536; *Meizinger v Akin*, 192 AD2d 1011, 1013-1014, *lv denied* 82 NY2d 661; *Terbush v Buchman*, 147 AD2d 826, 828). Defendants argue that because the effects of alcohol consumption vary from one individual to another, this opinion is no more than rank speculation and insufficient to raise a question as to whether decedent was visibly intoxicated at the critical times. Essentially, they contend that the only way to demonstrate that a person was visibly intoxicated at a given time is by proffering the testimony of another who actually observed the individual at the time in question.[1]

Defendants' contention is too constrictive. Concededly, proof of intoxication, established by one's blood alcohol content or by the fact that one has consumed a certain amount of alcohol, is not enough, without more, to sustain a cause of action under that portion of the Dram Shop Act which imposes liability when alcohol has been served to a *visibly* intoxicated person (*see*, Alcoholic Beverage Control Law § 65 [2], as amended by L 1986, ch 750, § 1; Governor's Mem, 1986 McKinney's Session

---

1. Jack's also suggested, in its reply papers, that because Oram's conclusion was premised, in part, on a toxicology report that was not properly certified, his affidavit must be rejected as inadmissible. Supreme Court implicitly rejected this argument, and on appeal defendants argue only that Oram's opinions do not raise a question of fact sufficient to preclude summary judgment. In our view, it would be unfair to dismiss plaintiffs' claims on the basis of an argument which they had every reason to believe had been accepted as meritless or abandoned by defendants (*see, Kivort Steel v Liberty Leather Corp.*, 110 AD2d 950, 952).

Laws of NY, at 3194). Since people may display vastly different physiological and behavioral responses after ingesting the same quantity of alcohol (*see, Senn v Scudieri*, 165 AD2d 346, 350), assigning responsibility on the basis of crude generalizations about the effects of alcohol consumption alone is ill-advised (*see, Burnell v La Fountain*, 6 AD2d 586, 590).

Significantly, however, Oram has done more than merely infer that because decedent consumed a certain amount of alcohol, she must necessarily have been intoxicated, and appeared so. Rather, having considered decedent's physical characteristics, as they relate to her ability to metabolize alcohol, he has concluded, with a reasonable degree of medical certainty, that she, in particular, would have displayed certain outward signs of intoxication when she was present at Jack's and Martel's.[2] In this respect, he states unequivocally that gaze nystagmus—one visible sign of intoxication—would have been "very noticeable" in *any* individual with the blood alcohol concentration that decedent had (given her physical makeup and the levels of alcohol in her system at the time of the accident) while at Jack's and Martel's, and that this symptom, as well as others including glassy eyes, motor impairment, and difficulty speaking and controlling the voice, *would have been* exhibited by decedent during the pertinent time period.

Where, as here, an expert is able to conclude, on the basis of known, case-specific facts, that a discrete individual would indeed have responded in a predictable way, such an opinion should not be cavalierly disregarded, especially when the issue is being raised in the context of a motion for summary judgment and the credibility of witnesses is pivotal. That opinion is, at least on the record before us, enough to raise a question of fact as to whether decedent was visibly intoxicated when she was served at Jack's and/or Martel's (*see, Wasserman v Godoy*, 136 AD2d 631, 632). Hence, summary judgment was properly denied by Supreme Court.

CREW III, J. (concurring in part and dissenting in part). The record plainly reveals that defendants Martel's of Broadway, Inc. and Jack's Oyster House, Inc. (hereinafter collectively referred to as defendants) tendered sufficient admissible proof

---

2. While the dissenters assail the quality of Oram's affidavit, the fact remains that defendants themselves have not challenged Oram's qualification to render his opinion (*cf., People v Van Sickle*, 120 AD2d 897, 899, *lv denied* 68 NY2d 760), nor have they submitted any proof tending to show that consideration of other factors, such as decedent's ingestion of medication, would have had any effect on Oram's conclusions.

in support of their respective motions for summary judgment to negate an illegal sale of alcohol to Nancy A. Stanley (hereinafter decedent), and we have no quarrel with the majority's findings in this regard. In opposition to defendants' motions, plaintiffs submitted the affidavit of Thomas Oram, a pathologist, together with the accident and investigation reports prepared by the Town of Colonie Police Department and the toxicology report prepared by the State Police, the latter of which indicated that decedent had a blood alcohol level of 0.26% by weight and 0.33% alcohol by weight in her urine. In his affidavit, Oram opines that not only was decedent intoxicated while she was at Jack's and Martel's, but that based upon her high blood alcohol level, she would have shown and did in fact exhibit visible evidence of intoxication while at those establishments, including motor skill impairment, gaze nystagmus, glassy eyes and difficulty in speaking and controlling the level of her voice. Although the majority concludes that Oram's affidavit is sufficient to raise a question of fact as to the critical issue in this case—namely, whether decedent was visibly intoxicated while she was at either Jack's or Martel's on the night in question—we respectfully disagree.

As a threshold matter, we note that the police and accident reports contained in the record are hearsay, and the toxicology report is not properly certified; accordingly, these documents do not constitute proof in admissible form of decedent's level of intoxication (*see, Costa v 1648 Second Ave. Rest.*, 221 AD2d 299, 300). Oram's expert affidavit is similarly deficient in this regard, as it is based to a significant degree upon the results contained in the toxicology report (*see, supra*, at 300). Additionally, it is well settled that an "expert should be possessed of the requisite skill, training, education, knowledge or experience from which it can be assumed that the information imparted or the opinion rendered is reliable" (*Matott v Ward*, 48 NY2d 455, 459). Thus, Oram's opinion should be accepted as evidence of decedent's visible intoxication only if there is an evidentiary basis in the record sufficient to demonstrate that he possessed the requisite skill, training, education, knowledge or experience to establish the reliability of his opinion correlating the physical findings of decedent's autopsy, including her blood alcohol content, to visible signs of intoxication. As this appeal involves a summary judgment motion, the requisite showing must be by evidentiary proof in admissible form and not "mere conclusions, expressions of hope or unsubstantiated allegations or assertions" (*Zuckerman v City of New York*, 49 NY2d 557, 562).

Here, Oram's affidavit contains only a conclusory allegation generally referring to his purported expertise in and familiarity with the study of the visible signs of intoxication. Notably absent from the record are any specific factual allegations as to where, when and how Oram gained his expertise in this area or where, when, how and by whom the studies forming the basis for his expertise were conducted. Given the novel character of his opinion, we are not persuaded that his background as a physician with a special expertise in pathology qualifies him to render an opinion correlating decedent's blood alcohol content to visible signs of intoxication.[1] Absent proof of Oram's expertise in this area, a key element of the foundation for the admission of his opinion is lacking. Accordingly, we conclude that plaintiffs failed to meet their burden of tendering *admissible* proof in opposition to defendants' motions for summary judgment and, as such, the motions should have been granted on that basis alone.[2]

Moreover, even accepting the admissibility of the various reports, we are of the view that, given the overwhelming proof that decedent was not visibly intoxicated either while at or upon her departure from the relevant establishments, Oram's conclusory and speculative affidavit is insufficient to raise a question of fact in this regard. While it is true, as the majority points out, that Oram reviewed tissue slides of decedent's liver and took into consideration decedent's individual physical characteristics and her particular blood and urine alcohol levels in formulating his opinion, two important points bear mention. First, it must be remembered that all of Oram's information came from records compiled after decedent's death; Oram never met decedent, was not intimately familiar with her medical history and, unlike many of the witnesses deposed in this matter, had no first-hand knowledge of her drinking

---

1. Nor are we persuaded that this is a case where an individual's general qualifications as a medical expert are sufficient to render his or her opinion admissible, with criticism of those qualifications only a matter that might affect the weight to be accorded such opinion by the trier of fact (*cf.*, *Matter of Enu v Sobol,* 171 AD2d 302, 305).

2. The mere fact that defendants may not have specifically challenged the admissibility of plaintiffs' proof in their respective briefs on appeal is of no moment, as it is this Court's function, on a motion for summary judgment, to review both the sufficiency and the admissibility of the proof tendered. Moreover, given this Court's broad powers on a motion for summary judgment to search the record and award the relief warranted thereby (*see, Merritt Hill Vineyards v Windy Hgts. Vineyard,* 61 NY2d 106, 110-111; *see also,* CPLR 3212 [b]), plaintiffs are hardly in a position to claim surprise at the fact that the admissibility of their proof is in issue.

habits or the effect, if any, that alcohol had upon her (*cf.*, *Matter of Van Patten*, 215 AD2d 947, 949, *lv denied* 87 NY2d 802). Additionally, even assuming that Oram could, based upon scientific studies and statistical probabilities nowhere referenced in this affidavit, opine that a given blood or urine alcohol level would result in visible intoxication in a certain percentage of the population (*see*, *Costa v 1648 Second Ave. Rest.*, 221 AD2d 299, 300, *supra*), given the "inherent limitations in medical opinion evidence because of the absence of scientific certainty" (*Matter of Van Patten, supra*, at 949), it is simply impossible to postulate what visible effect, if any, *decedent's* blood alcohol level had upon her on the night of the accident.

Although the majority asserts that Oram has done more here than simply infer that decedent's elevated blood alcohol level necessarily resulted in visible signs of intoxication, we cannot agree. In this regard, we acknowledge that Oram did indeed take into consideration factors beyond decedent's blood alcohol level, i.e., her physical makeup and, based upon his review of her liver tissue slides, her ability to metabolize alcohol, in reaching his opinion. With all due respect to the majority, however, Oram's review of those factors does not change the fact that, in the final analysis, his opinion amounts to nothing more than his purely speculative belief that decedent exhibited visible signs of intoxication on the night in question.

To be sure, we have no quarrel with the proposition that a duly qualified expert, presented with sufficient information, including a given individual's blood alcohol content at the time of accident or death, may determine with a reasonable degree of medical certainty, *inter alia*, how many drinks the individual would need to have consumed to reach a given blood alcohol level or perhaps even what that individual's blood alcohol level would have been in the hours preceding the precipitating event (*see generally*, *Meizinger v Akin*, 192 AD2d 1011, 1013, *lv denied* 82 NY2d 661). However, to attempt to postulate or opine, as Oram has done here, how decedent would have acted or did in fact appear while at Jack's or Martel's on the night in question is entirely speculative, and the fact that Oram considered decedent's particular bodily characteristics in reaching that opinion does not alter our conclusion in this regard.[3]

---

3. We note in passing that, with all due respect, Oram's affidavit is not as detailed and particularized as the majority suggests. Notably, the record reflects that the blood and urine samples taken from decedent were not

As a final matter, we are of the view that permitting an expert to opine, as the majority essentially has done here, that a specific blood alcohol level will or does indeed result in visible intoxication is contrary to established case law in this area. The courts of this State have long recognized that the effects of alcohol consumption will vary greatly from one individual to another (*see, e.g., Senn v Scudieri*, 165 AD2d 346, 350; *Burnell v La Fountain*, 6 AD2d 586, 590). Additionally, the statutory amendment to Alcoholic Beverage Control Law § 65 (2) (*see,* L 1986, ch 750, § 1), the legislative history accompanying it (*see,* Governor's Mem, 1986 McKinney's Session Laws of NY, at 3194) and the case law interpreting that provision (*see, e.g., Jones v Kelly*, 201 AD2d 536; *Meizinger v Akin, supra*, at 1013) make clear that proof of mere intoxication is not sufficient to sustain a claim under the Dram Shop Act; there must be evidence that the individual in question was *visibly intoxicated*. It therefore logically and necessarily follows that the statute does not presume that a specific blood alcohol content will or does in fact result in visible intoxication. That is precisely what Oram has done here and permitting such opinion evidence is, in our view, not only contrary to the plain wording of the statute, but entirely inconsistent with the prior amendment thereto. Accordingly, we would reverse Supreme Court's order and grant defendants' respective motions for summary judgment dismissing the complaint against them.

MIKOLL, J. P., and PETERS, J., concur with YESAWICH JR., J.; CREW III, J., concurs in part and dissents in part in a separate opinion in which CASEY, J., concurs.

Ordered that the order is affirmed, with costs.

---

analyzed until four days after her death, and Oram fails to explain what effect, if any, this intervening period would have upon the level of alcohol ultimately detected in her system. Additionally, there was testimony that on the day of the accident decedent was ill, taking medication and under extreme stress, and, further, that she had been observed on prior occasions to "hold her liquor pretty well". All of these factors, other proof in the record indicates, may have had an effect upon decedent's ability to metabolize alcohol and none of these issues are anywhere addressed in Oram's affidavit. Although such deficiencies arguably go to the weight and not the admissibility of his opinion, we mention them to highlight the lack of specificity in his affidavit.