[869 NYS2d 49]

JOAQUIN VALENZUELA, Respondent, v CITY OF NEW YORK, Appellant.

First Department, December 11, 2008

## APPEARANCES OF COUNSEL

*Michael A. Cardozo, Corporation Counsel*, New York City (*Susan Choi-Hausman, Pamela Seider Dolgow, David Depugh* and *Elizabeth S. Natrella* of counsel), for appellant.

*The Pagan Law Firm, P.C.*, New York City (*Tania M. Pagan* of counsel), for respondent.

## OPINION OF THE COURT

MOSKOWITZ, J.

We reverse and remand this case for a new trial because the misconduct of plaintiff's counsel so tainted the proceedings that it deprived defendant of a fair trial.

On May 16, 1999, plaintiff was injured when he fell during a softball game in the middle softball field in Fort Washington Park. The accident occurred while plaintiff was running from second base to home plate. After rounding third base, approximately five to six feet from the bag, he tripped when his left foot fell into a ditch. He felt his left ankle crack. Plaintiff claimed that the ditch, that he had not previously noticed, was approximately 14 inches wide and deep, and 20 feet long. Plaintiff claimed that defendant City of New York was negligent in failing to maintain the field and that this negligence directly resulted in his accident and subsequent injury. Plaintiff denied telling anyone at the hospital where he received treatment about how the accident happened.

The trial in this case commenced on July 19, 2006. During his opening, plaintiff's attorney gave an extensive description of plaintiff's injuries. Immediately after opening statements, the trial judge bifurcated the issues of liability and damages. During the trial, plaintiff's counsel repeatedly acted as a witness. For example, when the City's attorney cross-examined plaintiff about a photo and asked where third base would have been, plaintiff's attorney objected and repeatedly stated that that portion of the photograph represented the pitcher's mound. When the City's attorney objected that plaintiff's attorney was testifying to his own personal knowledge, plaintiff's attorney inter-

jected: "You were never there" and "I was there. That's the pitcher's mound." The court overruled the City's objection and stated that that portion of the photo was not third base. The City's attorney renewed his objection outside the presence of the jury.

The City also read into evidence portions of plaintiff's December 18, 2000 deposition in which plaintiff stated that shortly after he fell, an ambulance arrived, but a Parks Department pickup truck removed him from the area because the ambulance could not physically enter the park. Despite this testimony from plaintiff that he was taken off the field in a vehicle, when the City's attorney stated in his closing argument that "[t]he so-called ditch or defect that we've been hearing about the whole trial, that was the pickup truck that was testified to that drove in to pick up the plaintiff from the first base area," plaintiff's attorney moved for a mistrial, to strike the City's attorney's comments and accused the City's attorney of lying. Plaintiff's counsel stated that the City's attorney's comments were "an absolute fabrication, your Honor, that a truck could enter that property." Upon the City's attorney's objection that plaintiff's attorney was testifying, plaintiff's attorney reiterated, in front of the jury, "[a]s an officer of the court, your Honor, I'm telling your Honor that that is an absolute fabrication." The court failed to give a curative instruction. Subsequently, outside the presence of the jury, the parties agreed that the court would tell the jury that the reference to the "truck" would be to a small, green Parks Department truck. The court so instructed the jury.

Defendant called Catherine O'Leary, a registered nurse at New York Presbyterian Hospital who helped treat plaintiff in the emergency room. She testified that she wrote on plaintiff's emergency triage sheet: "6:40 P.M. Patient injured left ankle while playing baseball, sliding into third base." O'Leary likely learned through an interpreter that the injury occurred while plaintiff was sliding into third base because O'Leary does not speak Spanish and plaintiff does not speak English. In an effort to refute this testimony that was obviously damaging to his case, plaintiff's attorney, during his summation, claimed there is no word in Spanish for "sliding into third base."

During his closing, plaintiff's attorney also made the following statements:

"It is something to win or lose based upon fact and

truth. It is another thing to win or lose based upon misconceptions and half truths and sometimes things that you know cannot be.

"And when we began this, when I told you that I would—that I had the burden and I would present evidence, the one thing I didn't tell you is that I would create half truths and I would create things to try to fool you. That's not something I do. That's not something I ever will do. And that's not something that was done here.

"And I challenge you now, if you think that is what happened, if you think that is what I did or that's what [plaintiff] did, then I ask you, you can get up now, you can go in there and just say, 'I don't want to,' whatever it is, then leave. If you believe that that's the kind of person I am or that gentleman is."

On the City's objection that this was not about character, plaintiff's attorney withdrew his statement, but then continued, "If you believe that [plaintiff]—because he's challenging his credibility—if he is that kind of person, then we can stop now."

Later, in his summation, plaintiff's attorney reiterated his own prior statement that the photo depicted the pitcher's mound and not third base. He also implied that there was a fence through which no vehicle could enter by questioning why the City did not ask Mr. Reyes, a Parks Department employee, the following question: "Why don't you tell us, sir, that there is a fence right here through which you cannot come?" The court sustained the City's objection to plaintiff's attorney testifying based on his own observation of the field.

The jury found that the City had failed to maintain the softball field in a reasonably safe condition, that the City had actual or constructive notice of the defect and that the City's negligence was a substantial factor in causing plaintiff's injuries. It also found that plaintiff, himself, was negligent and that his negligence was a substantial factor in causing his own injury. The jury apportioned negligence 80% to the City and 20% to plaintiff.

On August 14, 2006, the City moved to set aside the jury verdict, and for entry of judgment as a matter of law in favor of the City, or, in the alternative, for a new trial, on the grounds, among other things, that the statements of plaintiff's attorney

tainted the jury and that bifurcation was an abuse of discretion because the discussion of damages during opening statement prejudiced the City's case.

In opposition, in defense of his objection during the City's summation, plaintiff's attorney argued that defense counsel's statements regarding the area where the "pickup truck" allegedly picked up plaintiff were misleading.

In a decision and order dated August 28, 2006, the court denied the City's motion, finding that the statements by plaintiff's attorney did not taint the jury and that the City's claimed basis for overturning the verdict—that bifurcation was improper—was "without any merit" as "[n]either side mentioned anything specific about damages in their openings." The court subsequently entered the liability judgment on January 16, 2007.

The decision of the court was in error. In appearing as a lawyer before a tribunal, a lawyer shall not assert personal knowledge of the facts in issue, except when testifying as a witness, and shall not assert a personal opinion as to the credibility of a witness (Code of Professional Responsibility DR 7-106 [c] [3], [4] [22 NYCRR 1200.37 (c) (3), (4)]); *see also People v Paperno*, 54 NY2d 294, 300-301 [1981]; *People v Blake*, 139 AD2d 110, 114 [1988]. This conduct amounts to a subtle form of testimony, as to which the opposing party cannot cross-examine (*id.*, citing *Paperno* at 301). In ruling on a motion for a new trial based on attorney misconduct, the trial court must determine, in its discretion, whether counsel's conduct created "undue prejudice or passion which played upon the sympathy of the jury" (*Marcoux v Farm Serv. & Supplies, Inc.*, 290 F Supp 2d 457, 463 [SD NY 2003]). We review for abuse of discretion.

This Court cannot condone plaintiff's counsel's violation of these basic ethical and disciplinary rules. Further, our examination of the record, as detailed above, indicates that plaintiff's counsel so tainted the course of the trial that he effectively destroyed any chance for a fair outcome. Plaintiff's counsel interjected his own view of the facts as to how he perceived the field when he visited it with his expert the day before the trial and tried to bolster his own credibility when he claimed that he had been to the accident site, even though the court had precluded plaintiff's expert from testifying about the condition of the field because the visit had occurred years after the accident. A particularly egregious impropriety occurred during the defense's summation, when the City suggested that the truck

that picked up plaintiff after the accident caused the rut in the ground. Plaintiff's counsel twice claimed that the City was fabricating evidence because no truck could enter the field. Counsel made this statement even though testimony from his own client indicated that a Parks Department truck had picked plaintiff up from the field. Moreover, counsel unequivocally vouched for his own credibility and sought to bolster it as well by improperly invoking his status as a member of the bar. Thus, counsel expressly asserted in the presence of the jury that "[a]s an officer of the court," he was "telling" the court that the City's counsel was fabricating evidence.

During plaintiff's closing, counsel again alluded to his knowledge of the field and implied that there was a fence that a pickup truck could not pass through. Counsel also alluded to his unsworn testimony that a photo depicted the pitcher's mound, not third base.

To add insult to injury, presumably in an effort to offset O'Leary's testimony that plaintiff told her he broke his ankle sliding into third base, plaintiff's counsel stated in his closing that there was no word in Spanish for sliding into third base even though there was never any evidence in the record on this point. During plaintiff's closing, counsel once again vouched for his and his client's credibility by stating he never created half truths or tried to fool the jury and had not done so in this case. While counsel withdrew this statement upon the City's objection, he then reiterated that if the jurors thought plaintiff was that type of person they could stop now.

Plaintiff's attorney intended these remarks to influence the jurors by considerations not legitimately before them. This warrants a new trial (see People v Paperno, 54 NY2d 294, 300-301 [1981]; Clarke v New York City Tr. Auth., 174 AD2d 268, 276-278 [1992]; Senn v Scudieri, 165 AD2d 346, 355-357 [1991]). In view of this disposition, we need not reach the issue of whether it was proper for the court to have bifurcated the trial after plaintiff's counsel made references to damages and the extent of plaintiff's injuries in his opening statement.

Accordingly, the judgment of the Supreme Court, New York County (Robert D. Lippmann, J.), entered January 16, 2007, on a jury verdict, awarding plaintiff judgment as to liability, should be reversed, on the law and the facts, without costs, the judgment vacated, defendant's motion to set aside the verdict granted and the matter remanded for a new trial. Appeal from order, same court and Justice, entered November 15, 2006, that

46

denied defendant's motion to set aside the verdict, unanimously dismissed, without costs, as academic in view of the foregoing.

ANDRIAS, J.P., NARDELLI, McGUIRE and RENWICK, JJ., concur.

Judgment, Supreme Court, New York County, entered January 16, 2007, reversed, on the law and the facts, without costs, the judgment vacated, defendant's motion to set aside the verdict granted and the matter remanded for a new trial. Appeal from order, same court, entered November 15, 2006, unanimously dismissed, without costs, as academic in view of the foregoing.